Alex ERAZO, Appellant,

v.

The STATE of Texas.

No. 2206–02.

Court of Criminal Appeals of Texas.

June 16, 2004.

_____

Douglas M. Durham, Houston, for Appellant.

Alan Curry, Asst. DA, Houston, Matthew Paul, State's Attorney, Austin.

### OPINION

PRICE, J., delivered the opinion of the Court, in which MEYERS, WOMACK, JOHNSON, HOLCOMB and COCHRAN, JJ., joined.

A picture is worth a thousand words. Yet those words, in the context of a criminal trial, must be the right words. Otherwise, the picture from whence the words flow is inadmissible. A photograph is inadmissible under Rule of Evidence 403 if it is substantially more prejudicial than probative. In this case, the trial court admitted a photograph of the victim's unborn child.[1] We hold that, under the circumstances of this case, the photograph was substantially more prejudicial than probative. We reverse the judgment of the Court of Appeals.

### I. Facts and Procedural History

During the punishment phase of the appellant's murder trial, the State offered a 4-inch by 5-inch color photograph of the victim's unborn child that had been removed from the victim during the autopsy. The appellant objected that the photograph was inadmissible under Rules of Evidence 403 and 404. The trial court overruled the appellant's objection and admitted the photograph.

On direct appeal, the appellant complained that the photograph was inadmissible under Rule of Evidence 403 and our holding in _Reese v. State_.[2] The Court of Appeals held that admitting the photograph was within the trial court's discretion. The Court of Appeals distinguished the photograph in _Reese_ on the basis that the photograph in this case (1) was not from a funeral but was a standard autopsy photograph, (2) was one of sixty-two photographs admitted during the trial, (3) showed only the result of the appellant's actions, and (4) the prosecutor argued that the photograph showed that, contrary to the appellant's statement that he was the only one who suffered, others had suffered from his actions.[3]

---

1. _See_ Appendix A.

2. 33 S.W.3d 238 (Tex.Crim.App.2000).

3. This testimony came _after_ the trial court admitted the photograph at issue.

We granted the appellant's petition for discretionary review, in which he argued that the Court of Appeals erred in concluding that this photograph was admissible under Rule 403 and our holding in *Reese*.[4] A thorough review of the law regarding the admissibility of photographs and prejudicial evidence under Rule 403 is in order.

## II. Law

### A. *Reese, Montgomery,* and *Narvaiz*

█ In *Reese*, we used the factors found in *Montgomery v. State*,[5] and *Narvaiz v. State*,[6] to determine whether the photograph of an unborn child that had been removed from the mother's body and placed in the coffin beside her was more prejudicial than probative.[7] In *Montgomery*, we held that a proper Rule 403 analysis by either the trial court or a reviewing court includes, but is not limited to, the following factors: (1) the probative value of the evidence; (2) the potential to impress the jury in some irrational, yet indelible, way; (3) the time needed to develop the evidence; (4) the proponent's need for the evidence.[8] In the context of the admission of photographs, we also consider the factors set out in *Narvaiz*. Those factors include the number of photographs, the size, whether they are in color or are black and white, whether they are grue-some, whether any bodies are clothed or naked, and whether the body has been altered by autopsy.[9]

### B. *Martin*

We often have said that photographs depicting matters described by admissible testimony are generally admissible. This statement when viewed in isolation is far too broad and provides no guidance to the bench and bar to determine which photographs may be admitted and which must be excluded. We first made this statement in *Martin v. State*.[10] *Martin* was decided before the Texas Rules of Criminal Evidence were promulgated. In that case, while referring to the admission of crime-scene photographs, we said that "if a verbal description of the body and the scene would be admissible, a photograph depicting the same is admissible."[11] For this proposition, we provided no analysis and cited four cases from other jurisdictions.[12] The sentence that is rarely quoted along with the preceding sentence is: "We hold that if a photograph is competent, material and relevant to the issue on trial, it is not rendered inadmissible merely because it is gruesome or might tend to arouse the passions of the jury, unless it is offered solely to inflame the minds of the jury."[13] The cases we cited for the propo-

---

4. The exact ground on which we granted review is: Did the Court of Appeals's resolution of the appellant's second point of error, regarding the admission of a photograph of an unborn fetus at twenty-eight weeks gestation, during the punishment phase of the mother's murder trial, violate Rule 403 and *Reese v. State?*

5. 810 S.W.2d 372 (Tex.Crim.App.1991) (op. on reh'g).

6. 840 S.W.2d 415 (Tex.Crim.App.1992).

7. *See* Appendix B.

8. *Montgomery*, 810 S.W.2d at 389–90.

9. *Id.* at 429.

10. 475 S.W.2d 265, 267 (Tex.Crim.App.1972).

11. *Ibid.*

12. *Ibid.* (citing *Hinton v. People*, 169 Colo. 545, 458 P.2d 611 (1969); *State v. DeZeler*, 230 Minn. 39, 41 N.W.2d 313 (1950); *Pribyl v. State*, 165 Neb. 691, 87 N.W.2d 201 (1957); *Vaca v. State*, 150 Neb. 516, 34 N.W.2d 873 (1948)). We also cited, more generally, 73 A.L.R.2d 769 (1960).

13. *Ibid.*

sition that, if a verbal testimony of a photograph is admissible then the photograph is admissible, include similar caveats.

In *Hinton v. People*,[14] the defendant complained of the admission of a photograph of the murder victim that showed both the fatal stab wound and a surgical incision that was made to try to save the victim's life. The Colorado Supreme Court concluded that, "A photograph of a deceased homicide victim is admissible in a criminal trial, if it depicts anything which it is competent for a witness to describe in words." [15] Because the statement is limited to "a photograph of a deceased homicide victim," the statement is more specific than the broad statement that we generally quote from *Martin*. In *Hinton*, the photograph was of the victim and showed the wound that the defendant had inflicted. As such, the photograph was helpful to allow the jury to visualize the injuries described in testimony.

In *State v. DeZeler*,[16] the defendant complained of autopsy photographs that showed the fatal wounds to the victim. In that case, the Minnesota Supreme Court held that the photographs were relevant to material issues in the case.[17] The rule the Court set out in that case is:

Photographs are admissible as competent evidence where they accurately portray anything which it is competent for a witness to describe in words, or where they are helpful as an aid to a verbal description of objects and conditions, provided they are relevant to some material issue; and they are not rendered inadmissible merely because they vividly bring to jurors the details of a shocking crime or incidentally tend to arouse passion or prejudice.[18]

Once again, the Court's statement in *DeZeler* was more specific than the language we generally quote from *Martin*. There are several caveats to the general statement that photographs are generally admissible if a verbal description of the photograph is admissible.

The same is true of *Vaca v. State*[19] and *Pribyl v. State*.[20] In *Vaca*, the Nebraska Supreme Court held that a photograph in a manslaughter case that showed the location, nature, and extent of injuries was admissible.[21] The Court said that "[a] photograph proved to be a true representation of the person, place, or thing which it purports to represent, is competent evidence of anything of which it is competent and relevant for a witness to give a verbal description." [22] In the next paragraph, the Court said that, "[w]here a photograph illustrates or makes clear some controverted issue in the case, a proper foundation having otherwise been laid for its reception in evidence, it may properly be received, even though it may present a gruesome spectacle." [23] In *Pribyl*, the Court approved of the admission of photographs of the victim in a vehicular manslaughter case. The Court cited the same language in *Vaca* to support admission of the photo-

14. 169 Colo. 545, 458 P.2d 611 (1969).

15. *Id.*, at 554, 458 P.2d at 615.

16. 230 Minn. 39, 41 N.W.2d 313 (1950).

17. *Id.*, at 47, 41 N.W.2d at 319.

18. *Id.*, at 46–47, 41 N.W.2d at 319.

19. 150 Neb. 516, 34 N.W.2d 873 (1948).

20. 165 Neb. 691, 87 N.W.2d 201 (1957).

21. *Vaca,* 150 Neb. at 521, 523, 34 N.W.2d at 876–77.

22. *Id.*, at 522, 34 N.W.2d at 876.

23. *Ibid.*

graphs.[24] Both *Vaca* and *Pribyl* contain language that limits the broad proposition that photographs are admissible if testimony describing the photograph is admissible.

### C. Code of Criminal Procedure Article 37.07

■ Code of Criminal Procedure Article 37.07, Section 3(a)[25] governs the admissibility of evidence during the punishment phase of a non-capital trial. We have said that because the jury's decision in a non-capital case does not involve a discrete finding, the relevance of evidence cannot be determined by a deductive process but rather is a function of policy.[26] The policies that operate during the punishment phase of a non-capital trial include (1) giving complete information to the jury to allow it to tailor an appropriate sentence for the defendant; (2) the rule of optional completeness; and (3) whether the appellant admits the truth during the sentencing phase.[27] As a result, we have explained that relevance during the punishment phase of a non-capital trial is determined by what is *helpful* to the jury.[28]

### D. A Uniform Policy

Although we have reviewed the admission of photographs in many cases, we have not tied our authorities together to form a policy that will clearly assist trial courts in determining what photographs are admissible during criminal trials. What we can glean from a thorough review of the relevant authorities is that a photograph must be relevant, thus, it must be *helpful* to the jury. Like other demonstrative evidence, photographs should assist the jury with its decision, whether that be deciding guilt or punishment. A photograph should add something that is relevant, legitimate, and logical to the testimony that accompanies it and that assists the jury in its decision-making duties. Sometimes this will, incidentally, include elements that are emotional and prejudicial. Our case law is clear on this point: If there are elements of a photograph that are genuinely helpful to the jury in making its decision, the photograph is inadmissible

---

24. *Pribyl*, 165 Neb. at 701–02, 87 N.W.2d at 209–10.

25. Article 37.07, Section 3 states, in relevant part

(a)(1) Regardless of the plea and whether the punishment be assessed by the judge or the jury, evidence may be offered by the state and the defendant as to any matter the court deems relevant to sentencing, including but not limited to the prior criminal record of the defendant, his general reputation, his character, an opinion regarding his character, the circumstances of the offense for which he is being tried, and, notwithstanding Rules 404 and 405, Texas Rules of Evidence, any other evidence of an extraneous crime or bad act that is shown beyond a reasonable doubt by evidence to have been committed by the defendant or for which he could be held criminally responsible, regardless of whether he has pre-

viously been charged with or finally convicted of the crime or act. A court may consider as a factor in mitigating punishment the conduct of a defendant while participating in a program under Chapter 17 as a condition of release on bail. Additionally, notwithstanding Rule 609(d), Texas Rules of Evidence, and subject to Subsection (h), evidence may be offered by the state and the defendant of an adjudication of delinquency based on a violation by the defendant of a penal law of the grade of:
(A) a felony; or
(B) a misdemeanor punishable by confinement in jail.

26. *Rogers v. State*, 991 S.W.2d 263, 265 (Tex. Crim.App.1999).

27. *Mendiola v. State*, 21 S.W.3d 282, 285 (Tex.Crim.App.2000).

28. *Rogers*, 991 S.W.2d at 265.

only if the emotional and prejudicial aspects substantially outweigh the helpful aspects. With this in mind, we will apply this framework to the photograph in this case.

### III. Application

#### A. Description of the Photograph

In *Narvaiz,* we held that we should consider the form, content, and context of the photograph when reviewing a trial court's decision to admit a photograph over the defendant's objection. The photograph in this case was a 4–inch by 6–inch color photograph [29] of an unclothed fetus that is lying on its back on what appears to be a table. There is a small ruler that provides perspective. Several inches of pale umbilical cord can be seen protruding from the abdomen of the fetus.

#### B. The First *Montgomery* Factor:

#### The Probative Value of the Evidence

Under the circumstances of this case, the photograph of the fetus had almost no probative value. As a result, this factor weighs strongly in favor of exclusion.

The State had attempted to introduce this photograph during the guilt phase of the appellant's trial. When the medical examiner testified about the injuries to the victim in this case, the following exchange occurred.

[State]: During your autopsy of [the victim], did you discover that she was pregnant?

[Witness]: Yes, I did.

[State]: Can you tell the ladies and gentlemen of the jury approximately how far along she was in her pregnancy?

[Witness]: Twenty-eight weeks gestation so somewhere between six to seven months.

[State]: Was she in good health, [the victim], in good physical health other than the gunshot wound?

[Witness]: Yes.

[State]: Was the fetus in good health?

[Witness]: There was no evidence of congenital abnormality noted.

[State]: So it was a normal pregnancy?

[Witness]: Yes.

[State]: May I approach the witness, Judge?

The Court: Yes, sir.

[State]: Let me show you what's been marked State's Exhibit 64, 65, and 66. Were those photographs taken during the autopsy?

[Witness]: Yes, they were.

[State]: What is depicted in those photographs?

[Witness]: The baby.

[State]: I'd offer at this time State's 64, 65, and 66 after tendering the photographs to Defense counsel.

[Defense]: May we approach?

(At the bench, off the record)

The photographs were not mentioned again until the punishment phase, during which the State offered and the trial court admitted State's Exhibit 66 without a sponsoring witness. After the State's second and last punishment witness was excused, the State sought to introduce State's Exhibit 66.

[State]: The State would offer State's Exhibit 66, Your Honor, after tendering same to defense counsel.

[Defense]: May we approach?

---

29. The copy in the record is a black and white photocopy. The parties both say that this was a color photograph, however.

The Court: Yes, sir.

(At the bench on the record)

[Defense]: I'm going to object to the introduction of State's No. 66. He's not being tried for murder or anything else that 66 depicts. I would object to its introduction based on 403 and 404.

There is no purpose for it being offered into evidence other than to influence the jury, and the prejudicial extent of it is not outweighed by any probative value. For that reason I would object.

[State]: It is being offered to show the far ranging extent of this crime and the severity of the damage to the complainant, and to show this was obviously a healthy pregnancy.

The Court: I'm going to overrule your objection and find that the probative value outweighs any prejudicial effect.

No witness during the punishment phase of the trial sponsored this photograph when it was admitted. And no witness properly authenticated the photograph during the entire trial.

The State argues that this case is factually distinguishable from *Reese* because, in this case, the appellant knew the victim and knew that she was pregnant. This is no distinction. Our opinion in *Reese*, which was also a Harris County case, reveals that the female victim in that case was the defendant's girlfriend's daughter and that the defendant knew the victim and knew that she was pregnant. This case is not factually distinguishable on this basis.

The State also argues that the photograph in this case shows the death of the fetus and is helpful to the jury because the appellant knew the victim was pregnant.

It is true that the death of the fetus was a relevant part of the circumstances of the offense. It is also true that the fact that the appellant knew that the victim was pregnant and that he was the father of the unborn child is very relevant to the jury's process of tailoring a sentence for this appellant for this offense. These specific facts are helpful to the jury in tailoring the sentence for this defendant for this crime.

But this photograph adds nothing helpful to the already-admitted testimony that the victim was pregnant, that the appellant knew she was pregnant, and that the fetus died as a result of the mother's death. The photograph does not show that the appellant knew that the victim was pregnant. And, the photograph does not show that the appellant was the unborn child's father. In contrast to a crime-scene photograph, which would assist a jury in visualizing the scene, the photograph in this case does not add anything that is relevant to these facts.[30]

In other words, the relevance value of a photograph is to show appearance. The appearance of the dead fetus in this case was irrelevant. A crime-scene photograph or an autopsy photograph is not admissible simply to show the death of the individual. These photographs are admissible despite the fact, *and because*, they show more than the testimony. But that "something more" must be relevant and helpful to the jury.

In contrast to this case, there are cases in other states in which photographs of fetuses in homicide cases were helpful to the juries in those cases. Those cases, cited by the Court of Appeals and the State, are distinguishable from this case.

In *Sitton v. State*,[31] the defendant was charged with the manslaughter of the twin

---

**30.** *Cf. Sonnier v. State*, 913 S.W.2d 511, 519 (Tex.Crim.App.1995).

**31.** 760 So.2d 28, 31 (Miss.App.1999).

fetuses that appeared in the photograph admitted at trial. To obtain a conviction for manslaughter of a fetus, the State was required to show that the fetus was "quick."[32] The photograph of the two fetuses was relevant to show how developed the fetuses were.

Similarly, in *Commonwealth v. Lawrence*,[33] the defendant was convicted of the murder of a young woman and the involuntary manslaughter of the fetus she was carrying. The Supreme Judicial Court of Massachusetts held that the photograph of the fetus was relevant to show, by inference from the size of the fetus, whether the defendant knew that the adult victim was pregnant, an element of the charged offense.[34]

In *People v. Heard*,[35] the appellant was convicted of the murder of a pregnant woman and two other people. The Illinois Supreme Court upheld the admission of a photograph showing a six to eight-week fetus inside the victim's uterus because the photograph served the proper purpose of aiding the jury in understanding the medical examiner's testimony about the victim's wounds.[36]

In another case closer to home, the Corpus Christi Court of Appeals upheld the admission of a photograph of a still-born child in a medical malpractice case. In *Krishnan v. Ramirez*,[37] the doctor-defendant appealed a finding of medical malpractice following the still-born death of the plaintiff's child. The Court of Appeals concluded that the photograph was relevant in that case to show the normal appearance of the still-born child and to assist the jury in resolving a factual dispute.[38] In this case, the normal appearance of the fetus was not factually disputed or relevant to the jury's decision on punishment. In this way, *Krishnan* is factually distinguishable from this case.

The photographs in the cases cited above were helpful to the juries in those cases because they showed wounds suffered by the victim (or victims) for whose death the defendants were on trial or demonstrated elements that the State or plaintiff was required to prove to obtain a conviction or judgment. As a result, these photographs added something logical and relevant that made the photographs more probative than prejudicial. Because the circumstances surrounding the photograph in this case are distinguishable from those surrounding the photographs in the cases cited above, and because the photograph in this case was not helpful to the jury in assessing punishment, this factor weighs strongly in favor of exclusion.

### C. The Second *Montgomery* Factor:

#### The Ability to Impress Jury in Some Irrational Yet Indelible Way

The second factor, the ability to impress the jury in some irrational yet indelible way, also weighs strongly in favor of exclusion. The State argues that this was a small photograph—smaller than the photograph that we held was inadmissible in *Reese*. Although the size of the photo-

---

32. *Ibid.* A "quick child" is defined as "one that has developed so that it moves within the mother's womb." *Ibid.*

33. 404 Mass. 378, 536 N.E.2d 571 (1989).

34. *Id.*, at 390, 536 N.E.2d at 579.

35. 187 Ill.2d 36, 240 Ill.Dec. 577, 718 N.E.2d 58 (1999).

36. *Id.*, at 77–78; 240 Ill.Dec. 577, 718 N.E.2d at 81.

37. *Krishnan v. Ramirez*, 42 S.W.3d 205, 219 (Tex.App.-Corpus Christi 2001, pet. denied).

38. *Ibid.*

graph is a factor to consider, it is not the only factor. Although we have a black-and-white photocopy of the picture, at trial a color photograph was admitted. The State also argues that this was one of 62 photographs that was admitted during the trial. But, when we discussed this factor in *Reese*, we noted that the inadmissible photograph was the only one admitted during the *punishment phase* of the trial—not the whole trial. In this case, the photograph was one of two admitted during the punishment phase. The other photograph was a mugshot of the appellant.

Also, the State argues that, during closing argument, it focused on the victim's murder and the appellant's criminal record. Although the State did initially focus on the victim's murder and the appellant's criminal record, like the State's argument in *Reese*, the last portion of the State's argument in this case focused on the fetus. The State left the jury with these thoughts as they went to deliberate:

> Yesterday I introduced a photo into evidence which was marked Exhibit No. 66. I know most of you didn't want to look at it. I didn't want to offend you in any way and I can understand why you didn't want to look at it. Believe me, I understand, but I want to remind you of what we talked about in voir dire. I believe I said at the beginning or asked who of you watched those T.V. shows like The Practice and Law and Order. I told you that we're not here to entertain you. This whole thing is far more serious than that.

> The reason that was important is that I knew when I introduced that photograph that you would be asked to look at it so you can appreciate just how serious this is and far reaching and devastating an effect this defendant's crime has had. When he murdered Kendy Palma, he ended her life. He also ended what was

a normal healthy pregnancy and what should have resulted in a beautiful child. That's a very serious thing and he deserves to pay a serious penalty for it. His actions are final. They cannot be changed, but they can be punished in a just way.

> Ladies and gentlemen, I'm not asking you for a number. When you go back there and deliberate, I'm going to ask you for a word and that word is life because that's what this defendant deserves. Thank you.

The photograph shows a small and vulnerable unborn child. This image appeals to the jury's emotional side and encourages the jurors to make a decision on an emotional basis. This factor weighs strongly in favor of exclusion.

### D. The Third *Montgomery* Factor:

#### Time Needed to Develop the Evidence

The time needed to develop the evidence weighs in favor of admissibility. The State took very little time to introduce the photograph. There was no witness on the stand when the State introduced the photograph. Instead, after the court excused the State's last witness, the State offered the photograph into evidence. Because little time was taken to admit the photograph, this factor weighs in favor of admissibility.

### E. The Fourth *Montgomery* Factor:

#### The Proponent's Need for the Evidence

There are three questions that the reviewing court should answer when addressing this factor: "Does the proponent have other available evidence to establish the fact of consequence that the [photograph] is relevant to show? If so, how strong is that other evidence? And is the

fact of consequence related to an issue that is in dispute?" [39]

Regarding the first and second questions, testimony from the medical examiner and photographs of the victim had established during the guilt phase that the victim was pregnant and that the fetus died. Ample and adequate evidence of these facts existed.

And, the facts of consequence that this photograph was admitted to show were not in dispute. No one disputed the fact that the victim had been pregnant and that the fetus died. The Court of Appeals implied that the photograph was admitted to rebut the appellant's testimony that nobody suffered like him.[40] But this photograph was admitted before the appellant's testimony was offered. The trial court could not reasonably have found that the State needed this photograph to rebut the defendant's testimony.

The State did not need this photograph for any relevant purpose. These answers to these questions lead to the conclusion that the fourth factor weighs in favor of exclusion.

## IV. Conclusion

Having concluded, through a thorough analysis of the factors, that the photograph of the fetus was substantially more prejudicial than probative, we hold that the photograph was inadmissible during the punishment phase of the appellant's trial. We reverse the judgment of the Court of Appeals and remand for a harm analysis.

## Appendix A

STATE'S EXHIBIT 66

39. *Montgomery,* 810 S.W.2d at 390.

40. *See Erazo,* 93 S.W.3d at 536.

## Appendix B

COCHRAN, J., filed a concurring opinion in which MEYERS and HOLCOMB, J.J., joined.

I join the majority opinion. I write separately only to emphasize that Rule 403 rulings are highly dependant upon the particular circumstances of the case and the specific context in which the evidence is offered. Rule 403 is a fail-safe mechanism that gives the trial judge some discretion in excluding relevant, otherwise admissible evidence, when one of the explicit counter-factors listed in the rule ("the danger of unfair prejudice, confusion of the issues, or misleading the jury") substantially outweighs the probative value of the proffered evidence. As an exclusionary principle, it should be applied rarely.[1] Here, however, it should have been applied.

I think that this very same photograph might well be admissible in a different case. It might even have been admissible in this case under other circumstances. Here, however, the photograph simply picked itself up off of counsel's table and floated into evidence without the shepherding wings of a sponsoring witness.[2] Photographs cannot walk into evidence by themselves. They must be talked into evidence by a witness.

1. It goes without saying that I agree entirely with the statements contained in the law review article cited by the dissent.

2. Although the State did attempt to offer this exhibit through the medical examiner during the guilt-innocence stage of trial, the defense objected and the trial judge sustained that objection.

The probative value of a photograph that floats into evidence by itself is virtually nil. Looking at this exhibit in a vacuum tells us nothing about the defendant, the victim, the offense, or the context. It is simply a photograph of a live child or of a fetus with a portion of the umbilical cord attached. What, exactly, is the point? Only a witness could explain how this exhibit is probative to some aspect of the punishment phase of this trial.

I fully agree with the majority's discussion of the specific factors to consider and weigh in balancing probative value and prejudicial effect under Rule 403 and with its conclusion that, under these particular circumstances, the trial judge abused his discretion in admitting State's Exhibit 66.

HERVEY, J., filed a dissenting opinion in which KELLER, P.J., and KEASLER, J., joined.

A jury convicted appellant of murdering his pregnant girlfriend. On direct appeal, appellant claimed that the trial court abused its discretion to admit at the punishment phase of appellant's noncapital murder trial a 4–by–5 inch, color, autopsy photograph of the murdered victim's twenty-eight week old unborn child because it was "highly prejudicial." The Court of Appeals distinguished our decision in *Reese v. State*[1] and decided that the trial court did not abuse its discretion to admit the photograph. *See Erazo v. State,* 93 S.W.3d 533, 535–36 (Tex.App.-Houston [14th Dist.] 2002) (distinguishing *Reese* on basis that *Reese* was concerned with "the posed nature of the photo and the emotions a funeral tends to invoke"). This Court exercised its discretionary authority to review this decision.

The record reflects that the trial court conducted the balancing test under TEX.R. EVID. 403 before **admitting** the photograph.

[PROSECUTION]: The State would offer State's Exhibit 66, Your Honor, after tendering same to Defense Counsel.

[DEFENSE COUNSEL]: May we approach?

[THE COURT]: Yes, sir.

(At the bench, on the record)

[DEFENSE COUNSEL]: I'm going to object to the introduction of State's No. 66. He's not being tried for murder or anything else that 66 depicts. I would object to its introduction based on 403 and 404.

There is no purpose for it being offered into evidence other than to influence the jury, and the prejudicial extent of it is not outweighed by any probative value. For that reason I would object.

[THE PROSECUTION]: It is being offered to show the far ranging extent of this crime and the severity of the damage to the complainant,[2] and to show that this was obviously a healthy pregnancy.

[THE COURT]: I'm going to overrule your objection and find that the probative value outweighs any prejudicial effect.

According to a scholarly essay written by a current member of this Court, an appellate court under these circumstances misapplies the abuse of discretion appellate standard of review to decide that a

---

1. *Reese v. State,* 33 S.W.3d 238, 240–44 (Tex. Cr.App.2000) (holding that trial court abused its discretion to admit at the punishment phase of the defendant's capital murder trial a photograph of the murder victim and her unborn child lying in a casket).

2. The record reflects that, during closing jury arguments at the punishment phase, the prosecution urged the jury to use the picture for these purposes.

trial court abuses its discretion to **admit** the complained-of evidence. *See* Herasimchuk, *The Relevancy Revolution in Criminal Law: A Practical Tour through the Texas Rules of Criminal Evidence,* 20 St. Mary's L.J. 737, 782–94 (1989),[3] and at 783 n.113 (discussing treatise concluding that rule 403 does not require trial court to choose admission over exclusion, it requires the trial court to follow the balancing procedure if exclusion is to be based upon the rule) and at 794 (since the policy of rule 403 is based upon the trial court's conscious balance of competing probative and prejudicial factors, an appellate court will be focusing upon the methodology used by the trial court rather than its result in reviewing any allegations of "abuse of discretion").[4] And, recognizing that the rules of evidence are inclusionary rather than exclusionary with a presumption that relevant evidence is admissible[5] and that trial courts are in the best position to make the evidentiary call, it cannot be said that the Court's opinion correctly applies any reasonable formulation of the abuse of discretion appellate standard of review to the trial court's decision to **admit** the photograph. *See Montgomery,* 810 S.W.2d at 391 (op. on reh'g) (appellate court reviews trial court's rule 403 decision under abuse of discretion standard meaning that "an appellate court should not reverse a trial judge whose ruling was within the zone of reasonable disagreement"); *United States v. Jamil,* 707 F.2d 638, 642 (2nd Cir.1983) (given "the superiority of his nether position," a trial judge is given broad discretion to weigh these competing interests because he is in a superior position to evaluate all of the circumstances connected with them) (internal quotes omitted);[6] Herasimchuk at 784 n. 116 (evidence should "very sparingly" be **excluded** under rule 403, and, if there is any doubt about the existence of unfair prejudice, it is generally better practice to admit the evidence); *see also* Saltzburg, Capra and Martin, Commentary to Fed. R.Evid. 403 on "trial court discretion" stating:

> Rule 403 provides that evidence "may" be excluded, thus imparting significant discretion to the Trial Judge. The Appellate Court will not reverse a Rule 403 decision simply because the Appellate Judges would have ruled differently had they been trying the case. Error will be found only if the Trial Judge's decision cannot be supported by reasonable argument. (Citations Omitted). Appellate Courts [should] recognize that the Trial Judge has a unique vantage point from which to detect and assess the negative

---

3. This portion of the essay is attached as an Appendix.

4. The "plain" language of rule 403 provides a trial court with some discretion to **exclude** relevant evidence. It apparently was not intended to give appellate courts the power to decide that a trial court abuses its discretion if it decides to **admit** that relevant evidence. *See* Herasimchuk at 784–85 (rule 403 gives trial court some discretion to **exclude** otherwise relevant evidence when that evidence is "substantially outweighed" by specific countervailing factors) and at 787–88 (a trial court *may,* but is not required to, **exclude** evidence that meets the rule 403 standard) (emphasis in italics in original); *see also Montgomery v.*

*State,* 810 S.W.2d 372, 378 n. 7 (Tex.Cr.App. 1990) (op. on original subm'n) (rule 403, like its federal counterpart, provides that a trial court **may exclude** relevant evidence implying that the trial court is not required to do so).

5. *See Montgomery v. State,* 810 S.W.2d at 389 (op. on reh'g) (relevant evidence is presumed admissible); Herasimchuk at 787 (codified rules of evidence are inclusionary rather than exclusionary).

6. In *Jamil,* the Court decided that the trial court abused its discretion to **exclude** evidence under rule 403. *See Jamil,* 707 F.2d at 645.

factors that might arise from proffered evidence, and from which to balance these factors against the probative value of the evidence. Appellate Courts [should also be] sympathetic to the fact that the Trial Court must ordinarily conduct its Rule 403 balancing process on the spot, during the trial. The Trial Court does not usually have the luxury of carefully balancing, and even if it had the time, the balance of factors is rarely crystal-clear. As the Court stated in *Cooley v. Carmike Cinemas, Inc.*, 25 F.3d 1325 (6th Cir.1994):

> In our view of any trial record, we are mindful that evidentiary questions often require a trial judge to make quick decisions on doubtful questions. This is why we review evidentiary decisions for abuse of discretion. [Rule 403 challenges] demand swift but judicious weighing and balancing. Indeed, because such questions are often subject to a judge's discretion, this court often would affirm a judge's evidentiary decision "either way," whether the response to the lawyer's objection has been "sustained" or "overruled."

Essentially, Appellate Courts will check to see that a balancing process has been conducted; the result of a careful balancing process will not itself be second-guessed. (Citation Omitted).

Keeping in mind that rule 403 actually states that relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice," the Court's decision in this case can only be supported either by reading "may" to mean "must" or rule 403 to really say that "relevant evidence may be admitted

unless its probative value is substantially outweighed by the danger of unfair prejudice." Rule 403 does not say any of this.

The Court's opinion also misapplies the substantive law set out in rule 403 when it decides that the photograph is "substantially more prejudicial than probative." *See Erazo v. State*, 144 S.W.3d 487, 488, 497, 2004 WL 1353463 (Tex.Cr.App. No. 2206-02, delivered this date); Herasimchuk at 786 n. 120 ("probative outweigh[s] prejudicial" standard was significantly altered by the adoption of rule 403). The substantive standard under rule 403, however, is whether the probative value of the evidence is "substantially outweighed by the danger of unfair prejudice."[7] *See Robbins v. State*, 88 S.W.3d 256, 262–63 (Tex.Cr.App.2002) (each word of the rule 403 test is significant); Herasimchuk at 786–89 (relevant evidence may be excluded only if "unfair" prejudice "*substantially* [[8]] outweighs" any probative value). Deciding that the photograph should have been excluded because it is "substantially more prejudicial than probative" is literally a decision that the prosecution should not have offered evidence simply because it injured the opponent's case which, of course, is the central point of offering evidence. *See Rogers v. State*, 991 S.W.2d 263, 266 (Tex.Cr.App.1999); Herasimchuk at 788–89 (it must be remembered that virtually all proffered evidence is prejudicial to the opposing party and only "unfair" prejudice should ever be the basis for exclusion of relevant evidence).

Though it is not clear from reading the Court's opinion, it still appears to be the law that photographs depicting matters described by admissible verbal testimony

---

**7.** Appellant's trial objection that "the prejudicial extent of [the photograph] is not outweighed by any probative value" and his claim on direct appeal that the photograph was "highly prejudicial" also misstate the substantive law set out in rule 403.

**8.** Emphasis in original.

are also admissible unless the probative value of the photographs is substantially outweighed by the danger of unfair prejudice under rule 403. *See Ramirez v. State,* 815 S.W.2d 636, 647 (Tex.Cr.App.1991). In *Reese,* we reaffirmed "that a Rule 403 analysis by the trial court should include, but is not limited to" the following factors: 1) the probative value of the evidence, 2) the potential of the evidence to impress the jury in some irrational, but nevertheless indelible way, 3) the time the proponent needs to develop the evidence, and 4) the proponent's need for the evidence. *See Reese,* 33 S.W.3d at 240–41. We decided that the photograph in *Reese* was inadmissible under rule 403 because, although "the third and possibly the first factors weighed in favor" of admissibility, these factors were "not enough to overcome the prejudicial qualities of the photograph and the [proponent's] limited need for the photograph in the context of the contested" special issues at the punishment phase of the defendant's capital murder trial. *See Reese,* 33 S.W.3d at 243.

*Reese* illustrates the point this Court has made in prior cases that the admissibility of evidence at the punishment phase of a capital murder trial is an intrinsically factbound function of relevancy to the discrete factual issues contained in the special issues. *See Reese,* 33 S.W.3d at 241–43 (analyzing admissibility of the photograph in relation to the special issues); *Mosley v. State,* 983 S.W.2d 249, 268 (Tex. Cr.App.1998) (Meyers, J., dissenting), cert. denied, 526 U.S. 1070, 119 S.Ct. 1466, 143 L.Ed.2d 550 (1999). This Court has, however, recognized that the admissibility of evidence at the punishment phase of a noncapital felony offense (such as the one here) is a "function of policy rather than relevancy" because "there are no discrete factual issues at the punishment stage" and deciding "what punishment to assess is a normative process, not intrinsically

factbound." *See Sunbury v. State,* 88 S.W.3d 229, 233 (Tex.Cr.App.2002); *Rogers,* 991 S.W.2d at 265.

Unconstrained by the "intrinsically factbound function of relevancy" to the special issues, it would have been within the trial court's discretion in this case to have decided that the photograph was highly probative of, and the prosecution needed the photograph to depict, the "circumstances of the offense" so that the jury could tailor an appropriate sentence for appellant for this noncapital felony offense. *See* Article 37.07, § 3, TEX.CODE CRIM. PROC., (evidence of the "circumstances of the offense" may be admitted at the punishment phase of a noncapital felony offense); *Sunbury,* 88 S.W.3d at 233–34 (deciding what punishment to assess for a noncapital felony is a "function of policy rather than relevancy" and some policy reasons to consider when determining whether to admit punishment evidence include giving the jury complete information to tailor an appropriate sentence for a defendant); *Rogers,* 991 S.W.2d at 265. Unlike *Reese,* therefore, the first and third factors weigh heavily in favor of admissibility under rule 403.

The Court's decision in this case really boils down to the second *Reese* factor and a concern that, even though the jury could have heard about what appellant did to the victim's unborn child, the jury should not have seen a photograph depicting this because this encouraged the jury to make its sentencing decision on an emotional basis. *See Erazo,* at 495 (deciding that the second *Reese* factor weighed in favor of excluding the photograph because it encouraged "the jurors to make a decision on an emotional basis"). Again, this misstates the legal test. Our case-law actually refers to an "undue tendency" to suggest decision on an "improper basis" such as an "emotional one." *See Rogers,* 991 S.W.2d at 266 ("unfair prejudice" refers to "an undue tenden-

cy to suggest decision on an improper basis, commonly, though not necessarily, an emotional one"). In this case, the powerful and compelling effects of the photograph giving rise to the Court's concern that the photograph improperly appealed to the jury's emotions emanates "from nothing more than what [appellant] has himself done." *See Sonnier v. State*, 913 S.W.2d 511, 519 (Tex.Cr.App.1995).

Under these circumstances, any tendency of the photograph to suggest decision on an emotional basis was not "undue" or "unfair." *See Rogers*, 991 S.W.2d at 263; Herasimchuk at 789 n. 127 (courts have almost always held that while it is prejudicial to defendants for a jury to see the precise nature and results of their conduct, it is not "unfairly" so) and at 790 n. 128 (discussing authorities stating that evidence may not be excluded merely because it is unpleasant, that evidence of repulsive injuries is not inadmissible because they may excite the jury's emotions and that a court cannot arrange for lively music to keep the jury cheerful while the State's case in a murder trial is being presented, and gruesome evidence cannot be suppressed merely because it may strongly tend to agitate the jury's feelings). And even if there was an "undue tendency" to suggest decision on an emotional basis (i.e., "unfair prejudice"), the probative value of the photograph was not "substantially outweighed" or even "outweighed" by this "unfair prejudice." *See Robbins*, 88

S.W.3d at 263; Herasimchuk at 786–89 ("unfair prejudice" must *"substantially"* outweigh any probative value) (emphasis in original). Jurors do not have to check their emotions at the courtroom door. *Cf. Rogers*, 991 S.W.2d at 266 (it is appropriate that jurors make value judgments based on the evidence that they receive); Herasimchuk at 789–90.[9] The second *Reese* factor also weighs in favor of admissibility under rule 403 which further distinguishes this case from *Reese*.[10]

I would decide that the trial court did not abuse its discretion to admit at the punishment phase of appellant's noncapital murder trial one autopsy photograph of the murdered victim's twenty-eight week old unborn child. I respectfully dissent.

## APPENDIX

This Appendix contains the following:

Herasimchuk, *The Relevancy Revolution in Criminal Law: A Practical Tour through the Texas Rules of Criminal Evidence*, 20 St. Mary's L.J. 737, 782–94 (1989).

---

**9.** In addition, excluding evidence, simply because it might encourage jurors to make a decision on an emotional basis, would require excluding any defense evidence that tugs at a juror's heartstrings to impose a lesser sentence.

**10.** The Court's opinion also suggests that it was improper for the prosecution to urge the jury to use the photograph "to appreciate just

how serious this is and far reaching and devastating an effect this defendant's crime has had." *See Erazo*, at 495. This, however, is precisely why the photograph was properly admitted to show the "circumstances of the offense." The prosecution did not use it for some nefarious purpose unrelated to the "circumstances of the offense." *See* Article 37.07, § 3; *Sunbury*, 88 S.W.3d at 233–34.