Affirmed in Part and Reversed and Remanded in Part; and Opinion on
Remand filed May 17, 2005









Affirmed in Part and Reversed and Remanded in Part;
and Opinion on Remand filed May 17, 2005.

 

 

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-01-01195-CR

____________

 

ALEX ERAZO, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

__________________________________________________

 

On Appeal from the 208th District Court

Harris County, Texas

Trial Court Cause No. 889,940

__________________________________________________

 

O P I N I O N   O N  
R E M A N D 








This is a murder case.  A previous panel of this court considered
whether the trial court erred in admitting an autopsy photograph of a dead
fetus removed from the deceased complainant and found no error.  The Court of Criminal Appeals disagreed and
remanded the case to this court for a harm analysis.  After reviewing the entire record on remand,
we do not have fair assurance that this photograph did not influence the jury
or that it influenced the jury only slightly in assessing appellant=s
punishment.  Accordingly, we affirm
appellant=s conviction and reverse and
remand to the trial court for a new punishment hearing.

I. 
Factual and Procedural Background

Appellant, Alex Erazo, was
convicted of murdering his seven-month-pregnant girlfriend, who was carrying
his child, by shooting her in the back of the head.  The jury assessed punishment at confinement
in the Institutional Division of the Texas Department of Criminal Justice for
life and a $10,000 fine.  On appeal, this
court affirmed the trial court=s
judgment, holding that the trial court did not err in admitting in evidence
during the punishment phase an autopsy photograph of the dead fetus removed
from the murder victim.  Erazo v.
State, 93 S.W.3d 533, 535B36 (Tex.
App.CHouston
[14th Dist.] 2002), rev=d in part, 144
S.W.3d 487 (Tex. Crim. App. 2004).  The
Court of Criminal Appeals held that the trial court abused its discretion in
determining that the probative value of the autopsy photograph was not
substantially outweighed by the danger of unfair prejudice.  Erazo v. State, 144 S.W.3d 487, 488B96 (Tex.
Crim. App. 2004).  The Court of Criminal
Appeals remanded the case to this court to determine the harm, if any,
resulting from the error.  Id. at
496.  

II.  Harm Analysis

Does
this court have fair assurance that the trial court=s erroneous admission of
the autopsy photograph of the murder victim=s dead fetus did not
influence the jury=s punishment verdict or
had only a slight effect thereon?

The trial court=s
erroneous admission of the autopsy photograph of the deceased complainant=s dead
fetus is harmless error if, after reviewing the entire record, we have fair
assurance the error did not influence the jury, or had but a slight effect upon
the jury=s verdict
in the punishment phase.  See Tex. R. APP. 
P. 44.2(b); Reese v. State, 33 S.W.3d 238, 243 (Tex. Crim.
App. 2000).  After reviewing the whole
record, we conclude that the admission of this evidence was harmful error.








The photograph in question
depicted a small and helpless unborn child. 
See Erazo, 144 S.W.3d at 495. 
Furthermore, this autopsy photograph did not depict the deceased
complainant, Kendy Palma; it showed only her dead unborn child.  See Reese, 33 S.W.3d at 244 (finding it
significant to harm analysis that erroneously admitted photograph of victim and
her dead fetus depicted only one of the two people C the
mother of the fetus C whose
deaths were the basis of appellant=s
capital-murder conviction).  This image
of the deceased complainant=s dead
fetus was likely to appeal to the jury=s
emotions and encourage the jury to make its punishment decision on an emotional
basis.  See Erazo, 144 S.W.3d at
495.  

The State, however, argues that
the erroneous admission of the autopsy photograph was harmless error because
the State did not emphasize the victim=s unborn
child during the punishment phase to provoke the jury into assessing a life
sentence.  Instead, the State contends,
its primary focus in its punishment-phase case was the seriousness of the
charged offense and appellant=s
criminal record.  However, the State=s closing
argument undermines this assertion. 
Although the State initially focused on Palma=s murder
and appellant=s criminal record, the end of the
State=s
argument focused on the unborn child and called special attention to the
photograph of the dead fetus.  The State
imparted these final thoughts to the jury just before its deliberations:

Yesterday I introduced a
photo into evidence which was marked Exhibit No. 66.  I know most of you didn=t want to look at it.  I didn=t want to offend you in
any way and I can understand why you didn=t want to look at it.  Believe me, I understand, but I want to
remind you of what we talked about on voire dire.  I believe I said at the beginning or asked who
of you watched those T.V. shows like The Practice and Law and Order.  I told you that we=re not here to entertain
you.  This whole thing is far more
serious than that.








The
reason that was important is that I knew when I introduced that photograph that
you would be asked to look at it so you can appreciate just how serious this is
and far reaching and devastating an effect this defendant=s crime has had.  When he murdered Kendy Palma, he ended her
life.  He also ended what was a normal
healthy pregnancy and what should have resulted in a beautiful child.  That=s a very serious thing and
he deserves to pay a serious penalty for it. 
His actions are final.  They
cannot be changed, but they can be punished in a just way.

Ladies and gentlemen, I=m not asking you for a
number.  When you go back there and
deliberate, I=m going to ask you for a
word and that word is life because that=s what this defendant
deserves.  Thank you.

 

Thus, in
its final statements to the jury, the State twice referred to the erroneously
admitted autopsy photograph, once specifying the exhibit number.  The State also emphasized at least four times
the importance of this photograph and the strong impact the State believed the
photograph would have on the jury.  The
State=s
closing-argument emphasis on the autopsy photograph of the unborn child is
significant to our harm analysis.  See
Reese, 33 S.W.3d at 244 (finding it significant to harm analysis that State
emphasized victim=s dead
unborn child at end of State=s closing
argument during punishment phase).

The punishment range in the case at bar is five
years to ninety-nine years or life imprisonment.  See Tex.
Pen. Code Ann. '12.32
(Vernon 2004).  Therefore, the jury
assessed the maximum possible punishment. 
In assessing punishment for appellant=s
intentional killing of his girlfriend, who was pregnant with his child, the
jury might have assessed punishment at confinement for life, even in the
absence of their consideration of the photograph in question.  However, the jury also could have assessed a
more lenient sentence.  See, e.g.,
Godwin v. State, 899 S.W.2d 387, 388B89 (Tex.
App.CHouston
[14th Dist.] 1995, pet. ref=d)
(affirming conviction for murder of man by stabbing him more than seventeen
times in the neck and torso, in which the jury assessed punishment at twenty
years=
confinement).








This case is factually similar in
some respects to Reese.  In Reese,
the defendant was sentenced to death after a punishment hearing at which the
trial court admitted a posed photograph of one of his victims and her dead
unborn child in a casket.  Reese,
33 S.W.3d at 239.  The photograph in the
instant case was an autopsy photograph, rather than a posed photograph, and the
photograph in this case showed only the dead fetus.  Id. 
The photograph in Reese showed one of the murder victims as well
as her dead fetus.  Id.  In Reese, the State admitted at trial
that it sought to inflame and prejudice the jury through the admission of the
photograph in question.  Id. at
244.  Though there was no such admission
in this case, in both Reese and the instant case a photograph showing a
murder victim=s dead fetus was admitted during
the punishment phase, and the State referred to the dead fetus during closing
argument.

After examining the entire
record, we do not have fair assurance that the erroneously admitted photograph
did not influence the jury or that it influenced the jury only slightly in
assessing appellant=s
punishment.[1]  See Reese, 33 S.W.3d at 243B44
(holding erroneous admission of photograph showing deceased victim and her dead
fetus was reversible error in capital murder case); Chapman v. State,
150 S.W.3d 809, 818 (Tex. App.CHouston
[14th Dist.]  2004, pet. ref=d.)
(holding erroneous admission of evidence in punishment hearing was reversible
error in case in which jury assessed punishment near maximum and in which State
emphasized erroneously admitted evidence in closing argument).  Thus, we cannot deem the error harmless.

III.  Conclusion








Because we do not have fair assurance that the trial court=s
erroneous admission of the autopsy photograph of the murder victim=s dead
unborn child did not influence the jury=s
punishment verdict or influenced it only slightly, we can only conclude this
error was harmful.  Accordingly, we
affirm appellant=s
conviction and reverse and remand for a new punishment hearing in accordance
with this opinion.

 

/s/        Kem
Thompson Frost

Justice

 

Judgment rendered and
Opinion on Remand filed May 17, 2005.

Panel consists of Chief
Justice Hedges and Justices Fowler and Frost.

Publish C Tex. R. App. P. 47.2(b).

 

 











[1]  In support of
its argument that the error in this case is harmless, the State cites Hayes
v. State.  85 S.W.3d 809, 816 (Tex.
Crim. App. 2002).  However, the only harm
analysis contained in that opinion is three sentences long, made in the
alternative, and based on overwhelming evidence of guilt in the guilt-innocence
phase.  See Hayes, 85 S.W.3d at
816.  Hayes is not on point in
this case.