COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

|  | § |  |
|---|---|---|
| ALEX CRANK, II, | | No. 08-09-00109-CR |
| | § | |
| Appellant, | | Appeal from the |
| | § | |
| v. | | 227th Judicial District Court |
| | § | |
| | | of Bexar County, Texas |
| THE STATE OF TEXAS, | § | |
| | | (TC# 2007CR10969) |
| Appellee. | § | |

## **O P I N I O N**

A jury convicted Alex Crank, II, of murdering his father and sentenced him to 99 years in prison. On appeal, he argues that his conviction should be reversed because gruesome, needless, and inflammatory pictures were admitted into evidence. We affirm.

The indictment charged murder under two theories: intentionally and knowingly causing the victim's death; and committing an act clearly dangerous to human life with intent to cause serious bodily injury. Appellant admitted that he shot the victim. The victim survived for over a week. The defense's trial strategy was to show that the victim's death resulted from medical negligence rather than the shooting.[1]

---

[1] This was the defense strategy pursued by counsel. Appellant wanted to pursue a different strategy. Against counsel's advice, he testified that the shooting was in self-defense. Appellant also refused to allow lesser-included offenses to be submitted to the jury. Counsel's pretrial motion for a competency evaluation was granted, but Appellant was found competent to stand trial. Shortly before trial, Appellant filed a motion to dismiss counsel and counsel filed a motion to withdraw because of their disagreements regarding trial strategy and other matters. These motions were denied.

Appellant's attorney began his opening statement by admitting that Appellant shot the victim. He asserted, however, that the shots were not fatal. According to counsel, the victim's wounds were healing, but while he was in the hospital he developed another condition that was not properly treated.

Among other evidence, the State presented the testimony of the first law enforcement officer to arrive at the scene of the shooting. During his testimony, two photographs of the victim were admitted into evidence without objection. The first photo shows the victim lying in a grassy area. His head is barely visible, but it appears bloody. The victim's head is more visible in the second photo, which was taken while the victim was still lying in the grassy area. His head is swollen and thoroughly covered with blood. This photo shows some of the victim's bullet wounds as well. In both of the photos, the view of the victim's face is partially obstructed by medical equipment and gauze.

Appellant's brother Timothy also testified during the State's case-in-chief. After speaking with his father's doctors, Timothy expected his father to die from the bullet wounds and he prepared himself for his father's death. Yet his father survived the first night in the hospital and seemed to improve the next day. Over Appellant's objection, the State introduced two photographs, Exhibits 20 and 21, during Timothy's testimony. The photographs show the victim's body, from his upper torso to his head, lying in a hospital bed. One photograph was taken from the right side and one from the left. They display some of the victim's bullet wounds, a patch over one of his eyes, tubes coming out of his neck and mouth, and blood around his nose, mouth, and one ear. Timothy believed that the photographs were taken three-to-five days after the shooting because his father looked better in the photos than he did when he was first admitted

to the hospital. Although his condition seemed to improve for several days, the victim eventually developed additional medical problems and was placed on life support. Two days later, the family decided to terminate life support.

The pathologist who performed the autopsy testified that the victim died from "complications of multiple gunshot wounds." Using two diagrams and ten autopsy photographs, she explained the victim's injuries. Appellant's attorney objected to the photographs, but not the diagrams.

The first photograph was used for identification and shows the victim's face with his eyes closed and a board with an identification number below his chin. A few partially healed wounds are visible on the victim's face. The next photos, Exhibits 24 and 25, show a gunshot wound on the right side of the victim's face. Exhibit 24 depicts this wound from a slight distance, and Exhibit 25 is a close-up. Exhibits 26 and 27 show wounds on the left side of the victim's face. The entire left side of the face can be seen in Exhibit 26; there is a laceration in the corner of the eye, a bullet hole near the cheekbone, and a bruise around the mouth. Exhibit 27 is a close-up of the bullet hole near the cheekbone. Exhibits 28 and 29 are two views of the victim's right earlobe. They show where a bullet entered and exited the earlobe and proceeded into the victim's neck. The same bullet then exited on the left side of the victim's neck, which is depicted in Exhibit 30. The next photograph, Exhibit 31, is of the victim's left side from his upper torso to his head. It shows the exit wound on the victim's neck, as well as three other bullet holes near his shoulder and some surgical incisions that had been sutured. The last photograph was Exhibit 32. It is a close-up of the three bullet holes near the shoulder.

In keeping with counsel's opening statement, the defense presented the testimony of a

medical expert. He believed that the hospital staff acted recklessly in failing to notify the victim's doctors about medical signs that the victim was experiencing internal bleeding. As a result of this recklessness, the victim suffered a cardiorespiratory arrest. Before this happened, the victim "was clearly making progress" and was "on the mend." Plans were already being made for his release to a rehabilitation facility. The defense expert testified that "[i]n all medical probability," the victim would have been released from the hospital to a rehabilitation center if he had not experienced the cardiorespiratory arrest.

Appellant argues that Exhibits 20, 21, and 23 to 32 should not have been admitted into evidence pursuant to Rule 403 of the Texas Rules of Evidence. He asserts that the photographs had almost no probative value because he never denied that he shot the victim. The photos merely showed the appearance of the victim's wounds without providing any insight into what caused his death. Appellant asserts that the pathologist's diagrams were sufficient to demonstrate the victim's injuries. Moreover, because the healing process had already begun, the pathologist could not even say whether most of the bullet holes depicted in the photographs were entrance or exit wounds. Appellant contends that the photographs were substantially likely to make an irrational and indelible impression on the jury because they were gruesome and morbid.

Rule 403 allows for the exclusion of relevant evidence if its probative value is substantially outweighed by the danger of unfair prejudice. *See* TEX.R.EVID. 403. We review the admission of photographs over a Rule 403 objection for abuse of discretion. *See Davis v. State*, 313 S.W.3d 317, 331 (Tex.Crim.App. 2010). The following factors must be balanced in any Rule 403 analysis: (1) the probative value of the evidence; (2) the potential to impress the jury in some irrational yet indelible way; (3) the time needed to develop the evidence; and (4) the

proponent's need for the evidence. *Erazo v. State*, 144 S.W.3d 487, 489 (Tex.Crim.App. 2004). In a Rule 403 analysis involving photographs, the following additional factors are relevant: (1) the number of photographs; (2) their size; (3) whether they are in color or black and white; (4) whether they are gruesome; (5) whether a body is clothed or naked; and (6) whether the body has been altered by an autopsy. *Id*. Autopsy photographs are generally admissible unless they depict mutilation of the victim caused by the autopsy itself. *Davis*, 313 S.W.3d at 331.

Here we have twelve color photographs that are five-inches wide and between seven-and-eight inches long. In several of the photos, the victim's shirtless torso is on view. None of the photos indicate any alteration from the autopsy. All of them are gruesome in the sense that they show blood and open wounds, and a lay jury would likely find any photograph of a dead person to be disturbing. But the photographs are not especially repugnant for a murder case. The number of the photographs and their graphic nature owe much to the nature of this particular murder, which involved multiple gunshot wounds, including several to the face. In other words, they are gruesome simply because "they depict disagreeable realities . . . of the brutal crime committed." *Chamberlain v. State*, 998 S.W.2d 230, 237 (Tex.Crim.App. 1999). This does not render them inadmissible. *See id*.

Contrary to Appellant's argument, the photographs had more than minimal probative value. Their probative value arose from the defense's theory of the case. Because the defense argued that medical negligence, not the gunshot wounds, caused the victim's death, it was important for the prosecution to establish the seriousness of the gunshot wounds. The hospital photographs suggest that the victim's condition was grave even during the period that the outlook for his recovery was improving. Moreover, the pathologist testified that the autopsy photographs

would help the jury understand her testimony regarding the victim's wounds.

As noted above, the photographs are not particularly gruesome. Appellant points out that the photographs include color close-ups of the victim's dead, bloody, and puffy face, but he does not contend that they were misleading in any way. Considering that this is a murder case and the photographs simply showed the injuries that were inflicted by the defendant and the eventual effect of the injuries, the photos likely would not impress the jury in an *irrational* way. As the Court of Criminal Appeals has stated, "[W]hen the power of the visible evidence emanates from nothing more than what the defendant has himself done we cannot hold that the trial court has abused its discretion merely because it admitted . . . into evidence photographs which are gruesome." *Sonnier v. State*, 913 S.W.2d 511, 519 (Tex.Crim.App. 1995).

The State did not spend a lot of time presenting the photographs. The discussion of the hospital photographs spans just over three pages in the reporter's record, including the bench conference in which their admissibility was determined. The discussion of the autopsy photographs spans approximately fifteen pages in the reporter's record, including additional bench conferences and pages in which the pathologist's diagrams were also presented. It only took about six pages for the actual presentation of the autopsy photographs to the jury. To put this in context, there are over five-hundred pages of testimony from the guilt phase of the trial.

The last Rule 403 factor to be considered is the State's need for the photographs. We must answer three questions to evaluate this factor. First, did the State have other evidence to establish the fact to which the photographs related? If so, how strong was the other evidence? Finally, is the fact relevant to an issue in dispute? *Erazo*, 144 S.W.3d at 495-96. The photographs established that the victim was shot multiple times. Although Appellant did not

-6-

dispute this fact, he did dispute the seriousness of the gunshot wounds. The State arguably could have gotten by with the pathologist's testimony and her diagrams, but the photographs were more powerful than the dry testimony and diagrams alone. The Court of Criminal Appeals has rejected the proposition "that visual evidence accompanying oral testimony is cumulative of the testimony or that it is of insignificant probative value. Visual evidence accompanying testimony is most persuasive and often gives the fact finder a point of comparison against which to test the credibility of a witness and the validity of [her] conclusions." *Chamberlain*, 998 S.W.2d at 237.

On balance, we conclude that the trial court did not abuse its discretion in admitting the photographs. But even if the court had abused its discretion, we would conclude that the error was harmless. *See* TEX.R.APP.P. 44.2(b); *Flores v. State*, 299 S.W.3d 843, 859 (Tex.App.-- El Paso 2009, pet. ref'd). There was overwhelming evidence of Appellant's guilt. *See Flores*, 299 S.W.3d at 859 (considering the overwhelming evidence of guilt in concluding that admission of photographs was harmless). It was undisputed that he shot the victim. The only issues in dispute were causation and justification. Because Appellant chose to testify in support of his claim of self-defense, the prosecutor was able to have him repeatedly state in front of the jury that he intentionally fired multiple shots toward the victim. Two gruesome photographs of the victim at the scene of the crime were admitted into evidence without objection. Moreover, the State did not mention any of the photographs during its closing arguments.

Appellant's sole issue is overruled, and the judgment of the trial court is affirmed.

April 29, 2011

DAVID WELLINGTON CHEW, Chief Justice

Before Chew, C.J., McClure, and Rivera, JJ.

(Do Not Publish)