# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-07-00412-CR

**Barclay Ragland, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF HAYS COUNTY, 22ND JUDICIAL DISTRICT
### NO. CR-06-771, HONORABLE WILLIAM E. BENDER, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Following a trial on a three-count indictment, a jury found appellant Barclay Ragland guilty of possessing more than four grams of methamphetamine with intent to deliver, possessing more than four ounces of marihuana, and possessing less than one gram of tetrahydrocannabinol. *See* Tex. Health & Safety Code Ann. §§ 481.112(a), (d), .116(a), (b), .121(a), (b)(3) (West 2003). The jury assessed punishment at forty-seven years in prison for the methamphetamine offense and at two years in state jail for the other offenses, and the trial court rendered judgments of conviction accordingly. In two points of error, appellant contends that his trial counsel was ineffective and that the trial court erred by admitting certain photographic exhibits during the punishment phase. We overrule these contentions and affirm the judgments of conviction.

On September 5, 2006, police officers assigned to the Hays County Narcotics Task Force executed a warrant to search the premises at 1121 Blevin Street in San Marcos and arrest

appellant. Detective Laray Taylor, the officer in charge and the State's primary witness, testified that appellant's elderly father and three women were in the residence when the officers entered, but appellant was not there. He was arrested six months later in Blanco County. Booking records show that appellant was carrying a Louisiana driver's license but gave as his address 1121 Blevin Street in San Marcos.

During the residence search, officers found and seized 9.8 grams of methamphetamine, 125 grams (4.4 ounces) of marihuana, .3 grams of tetrahydrocannabinol, a digital scale with marihuana residue on it, several glass pipes of the sort used to smoke methamphetamine or cocaine, a number of small plastic bags (some of which had unidentified residue in them), $4,000 in cash, and a bill from the Central Texas Medical Center addressed to appellant at the Blevin Street address. Officers also saw but did not seize items of men's and women's clothing. All of these items were found in the den and one bedroom of the house, which Taylor testified were occupied by appellant. According to Taylor, the other rooms of the house were occupied by appellant's father. Appellant does not challenge the sufficiency of the evidence.

**EFFECTIVENESS OF COUNSEL**

In point of error one, appellant urges that his trial counsel rendered ineffective assistance. To prevail on this claim, appellant must show that his counsel made such serious errors that she was not functioning effectively as counsel and that these errors prejudiced his defense to such a degree that he was deprived of a fair trial. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Hernandez v. State*, 988 S.W.2d 770, 771-72 (Tex. Crim. App. 1999); *Hernandez v. State*, 726 S.W.2d 53, 57 (Tex. Crim. App. 1986).

2

With regard to the first prong of *Strickland*, it is the appellant's burden to prove by a preponderance of the evidence that trial counsel's performance fell below an objective standard of reasonableness based on prevailing professional norms. *Robertson v. State*, 187 S.W.3d 475, 483 (Tex. Crim. App. 2006). In reviewing a claim of ineffective assistance, we must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance. *Jackson v. State*, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994). Judicial scrutiny of counsel's performance must be highly deferential, and every effort must be made to avoid the distortions of hindsight. *Robertson*, 187 S.W.3d at 483. Any allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness. *Mallett v. State*, 65 S.W.3d 59, 63 (Tex. Crim. App. 2001). Appellant's burden is made more difficult because no motion for new trial was filed, and there is no record focused on the conduct of counsel. *See Jackson*, 877 S.W.2d at 772 (Baird, J., concurring). The presumption of reasonable professional judgment can be overcome only if counsel's conduct was of a type that no reasonably competent attorney would have engaged in for any reason. *Mata v. State*, 226 S.W.3d 425, 428-29 (Tex. Crim. App. 2007).

Appellant contends that his attorney was ineffective in three respects during jury selection and the guilt/innocence phase of the trial. First, appellant complains that defense counsel failed to convey to the jury "any meaningful understanding of [the] State's burden of proof." Next, appellant asserts that his attorney failed to properly object to hearsay testimony used by the State to link him to the contraband. Finally, appellant complains that his lawyer did not object to irrelevant testimony regarding the dangers of methamphetamine production.

Appellant also contends that his lawyer was ineffective during the punishment stage of the trial. He complains that his attorney failed to object to hearsay testimony regarding the medical bill found during the search. He also urges that counsel failed to properly object to testimony and other evidence purporting to describe the consequences of methamphetamine abuse. Lastly, he asserts that counsel's closing argument at this stage misled the jury regarding the amount of methamphetamine he was found guilty of possessing.

### Burden of Proof

Because appellant was not present when the search warrant was executed and the contraband was seized, it was necessary for the State to prove circumstantially his knowing possession of the drugs. Appellant argues that given the nature of the evidence against him, defense counsel was ineffective for having failed to convey to the jury a meaningful appreciation for the State's burden to prove his guilt beyond a reasonable doubt. Appellant correctly notes that counsel did not mention the State's burden of proof during jury selection. In fact, counsel did not mention proof beyond a reasonable doubt until her closing argument at the guilt/innocence stage. Appellant contends that counsel's argument was both too little and too late to benefit him.

Defense counsel began and ended the guilt/innocence stage of the trial by emphasizing that the State had no direct evidence linking appellant to the contraband. During her opening statement, counsel told the jury:

> The State has a heavy burden to connect the defendant in this case, Mr. Ragland, to the drugs that have been found. And the evidence will show that there is no connection.

4

The prosecutor just spoke to you about inferences. You want to see some evidence connecting Mr. Ragland to those drugs. You're not going to get that opportunity, and I'm going to ask you to return a verdict of not guilty.

As appellant points out, defense counsel first mentioned reasonable doubt in her closing argument, when she told the jurors:

Beyond a reasonable doubt. It doesn't mean probably, it doesn't mean more than likely, it means something much more than that; it means more than a hunch, more than an assumption. The part [heart?] of the State's case is this knowing possession and that's where they have their problem. Knowing possession, let's make it simple, it really just means a connection from the drugs to Barclay Ragland.

The question is: Did the State present evidence beyond a reasonable doubt of that connection?

Counsel then discussed the various circumstances relied on by the State to link appellant to the contraband, offered alternative explanations for those circumstances, and suggested that the State was asking the jury to merely assume appellant's guilt. Counsel also reminded the jurors that Taylor had testified, during cross-examination, that the police had been watching the residence at 1121 Blevin Street for one month before executing the search warrant. She then pointed out that Taylor never testified that he had seen appellant at the residence.

The emphasis to place on the concept of proof beyond a reasonable doubt was a matter of trial strategy. On this record, appellant has not demonstrated that counsel's decisions in this regard are evidence of ineffective assistance.

5

***Links to Contraband***

During his testimony at the guilt/innocence stage, Taylor was asked by the prosecutor to explain why he believed that appellant knowingly possessed the drugs found at 1121 Blevin even though appellant was not present when the warrant was executed. Taylor responded by citing several facts, among them that "our analyst ran a check on the residence and he [appellant] also showed up as a resident of that home. His mother's name was initially there, but she had passed, but her name was still primary. But he was also listed as a resident there." Appellant asserts that defense counsel should have objected to this testimony as hearsay.

Defense counsel cross-examined Taylor about this "residence check." Taylor explained to counsel that "[i]f a person applies for [a] credit card or if they go to a hospital and there's some type of billing that's done and they use their address, that information goes to a database [called Autotrax]. And that database is what we have access to . . . ." Asked by counsel, "So that could just be a mailing address for bills" and to answer "yes" or "no," Taylor replied, "I believe it's a residence, ma'am." Taylor also acknowledged during cross-examination that the database showed appellant's deceased mother as the primary resident at 1121 Blevin and that he did not know if the database listed appellant's father. The officer could not say how up-to-date the database was.

We must assume that it was counsel's considered decision to forego a hearsay objection to Taylor's "residence check" testimony. We cannot say on the basis of the record before us that this was a choice that no reasonable attorney would have made. Counsel's handling of this matter does not manifest a lack of effective assistance.

6

*Methamphetamine Labs*

In response to questions from the prosecutor, Taylor briefly described for the jury the process by which methamphetamine is produced in clandestine labs. Taylor opined that "Mom and pop or homegrown labs are very rough. You use a lot of containers that aren't safe that contain certain acids and solvents that you use to make methamphetamine and that's why it's so dangerous." Taylor added that the manufacturing process releases "a lot of [dangerous] fumes." Appellant contends that his lawyer was ineffective because she did not object to this testimony, which appellant asserts was irrelevant.

No evidence of methamphetamine manufacturing was found during the search at 1121 Blevin. In fact, immediately after adducing the testimony summarized above, the prosecutor remarked to Taylor, "Now, there's no allegations in this case that this defendant was actually cooking meth." Taylor responded, "No, sir, there's not." Under the circumstances, even if defense counsel's failure to object to this testimony was an unjustifiable professional error, the error did not prejudice appellant to such a degree that he was deprived of a fair trial.

*Medical Bill*

During his punishment stage testimony, Taylor was asked by the prosecutor if the officer had obtained "any information at all" about the medical bill addressed to appellant and found during the search at 1121 Blevin. Taylor testified that he had learned that appellant "had some type of cyst or something in his mouth, and that was part of the medical bill for that, and that his father was paying for that medical condition." Asked by the prosecutor if he knew how appellant's father was able to pay this bill, Taylor replied, "The information I was given was that his dad had possibly

7

refinanced the house in order to get that done." At this point, defense counsel objected that "the witness is testifying to hearsay." The trial court did not rule on the objection, but told the prosecutor, "Move along."

Defense counsel's hearsay objection was late, and counsel failed to obtain a ruling from the court. Accepting that counsel erred in this regard, it must be remembered that the right to reasonably effective counsel does not mean errorless counsel whose competence or quality of representation is judged by hindsight. *Robertson*, 187 S.W.2d at 483. We do not believe that counsel's failure to timely object to this arguably inadmissible testimony, considered in the context of counsel's performance as a whole, justifies a finding of ineffectiveness.

### *Methamphetamine Use and Abuse*

Also at the punishment stage, Taylor was asked by the prosecutor, "Generally speaking, in your training and your experience, what sort of persons tend to purchase drugs?" Taylor answered, "A lot of them tend to be people that are dependent on others, not self-sufficient. Then, also, you have people that are involved within the criminal world: people that steal, people that rob, people that are less than honorable." Taylor was also asked to describe "the unique dangers associated with the use of methamphetamine." Taylor responded by saying that "there's problems with irritability . . . being easily aggravated, paranoia, aggressive behaviors, those types of things." Taylor added that in his twenty-two years of experience, he had never seen a drug as addictive and personally destructive as methamphetamine. He said that methamphetamine use was associated with theft, robbery, and assault, that users often shoplifted clothing to exchange for methamphetamine. According to Taylor, methamphetamine users will "steal from their families . . . [and] steal from

their parents." Taylor recounted two other cases in which he had been involved, one involving a mother with a child and husband and the other involving a female college student. In both cases, he said, their need for money to buy methamphetamine led them to prostitution. Defense counsel did not object to this testimony.

The prosecutor then questioned Taylor about the physical effects of long-time methamphetamine use:

> Q. Now, during the course of your career and in your training and experience, have you observed that there are physical side effects to the long-term, continued use of methamphetamine?
>
> A. Yes, sir.
>
> Q. What are the kind of unique physical side effects, the long-term effects, of using methamphetamine?
>
> A. One of the easiest ones to notice is that sometimes the face will sink in. Very weak eyes, heavy eyes, dark circles around the eyes because methamphetamine will also cause insomnia, where you won't sleep. You'll be up for long periods of time and it's because you're on the drug. A lot of times people break out in sores and some of that is typical. Sometimes what it is is what's called the creeps, where they think bugs are crawling on them and they start scratching and they literally scratch sores into the body.
>
> There's another condition that's called meth mouth. When you smoke the meth, methamphetamine, the acids in the methamphetamine attach to the enamel and deteriorates the enamel on the teeth. That's one way, the teeth sucking period, because people that are on meth, they don't consider their hygiene very much and they don't brush real well and the teeth start to rot away.

Following this testimony, to which there was also no objection, Taylor was shown three pairs of photographs, State's exhibits 43, 44, and 45, and asked if they "fairly and accurately depict the things shown in the photographs." Taylor answered, "Yes, they do." After the exhibits

9

were shown to defense counsel, she objected to their admission on the grounds that "the proper foundation has [not] been laid as to who took them, when they took them, and I don't see the relevance to this case." Counsel for the State responded that "I just have to establish that they were fair and accurate depictions of the things depicted. I don't have to establish who took them and when. And I think the relevance has already been established." Appellant's objections were overruled, and the photographs were then admitted in evidence and shown to the jury.

State's exhibit 43 is a pair of dental photographs showing a close-up of two mouths. In each photograph, the subject's teeth are either missing or badly decayed, and there is extensive gum damage. Taylor testified that the photographs depicted "two cases of meth mouth and what the methamphetamine actually does to people's teeth, how it deteriorates them."

State's exhibits 44 and 45 are two sets of before-and-after photographs. In exhibit 44, the "before" photograph is of a woman in her late twenties or early thirties. In the "after" photograph, captioned "1 year, 5 months later," the woman appears much older, her hair is dirty and unkempt, and there are several prominent sores on her face and lips. In exhibit 45, the subject of the "before" photograph is a woman in her late thirties. The "after" photograph, captioned "3 years, 5 months later," shows an even more dramatic change than that depicted in the other exhibit. The woman's skin is pasty, her eyes are sunken, and her face is deeply wrinkled and marked by what appear to be healing sores. Taylor testified that these exhibits showed "the effects of a person on methamphetamine over a certain period of time. You'll notice there's a shrinkage in the face, a sunken jawline, you can see the sores that come out on the face where a person heavily uses methamphetamine."

10

Appellant contends that Taylor's testimony describing methamphetamine users and the effects, both behavioral and physical, of methamphetamine abuse was irrelevant because "there was no connection to [him]." *See* Tex. R. Evid. 401, 402. He further argues that any relevance this testimony and the accompanying photographs might have had was outweighed by the danger of unfair prejudice. *See* Tex. R. Evid. 403. Appellant urges that his attorney's failure to object to this evidence on these grounds constituted ineffectiveness.[1]

During the punishment phase of any non-capital trial, "evidence may be offered by the state and the defendant as to any matter the court deems relevant to sentencing." Tex. Code Crim. Proc. Ann. art. 37.07, § 3(a)(1) (West Supp. 2008). The court of criminal appeals has said that the admissibility of evidence at the punishment stage is not a question of logical relevance, but a function of policy. *Sunbury v. State*, 88 S.W.3d 229, 233 (Tex. Crim. App. 2002). This is so because the punishment decision generally does not require the determination of discrete facts, but is instead a normative process that is not intrinsically factbound. *Id.* (quoting *Murphy v. State*, 777 S.W.2d 44, 63 (Tex. Crim. App. 1988) (op. on reh'g)). The policies that operate during the punishment phase include giving the jury the information needed to tailor an appropriate punishment for the defendant, the rule of optional completeness, and whether the defendant admits the truth during the punishment phase. *Erazo v. State*, 144 S.W.3d 487, 491 (Tex. Crim. App. 2004). The court of criminal appeals has also written that the determination of what is relevant to

---

[1] Appellant also complains that his counsel did not object to the lack of authentication of the photographs. *See* Tex. R. Evid. 901. As we will explain *infra*, we find counsel's objection sufficient in this regard.

sentencing "should be a question of what is helpful to the jury in determining the appropriate sentence for a particular defendant in a particular case." *Rogers v. State*, 991 S.W.2d 263, 265 (Tex. Crim. App. 1999).

In *Measeles v. State*, the defendant was found guilty of delivering methamphetamine. 664 S.W.2d 364, 365 (Tex. App.—Austin 1984, pet. ref'd). Over objection at the punishment stage, the State offered the testimony of a psychiatrist regarding the long-term effects of methamphetamine use and abuse. *Id*. The doctor testified, among other things, that the extended use of methamphetamine can cause the user to become "hyper, irritable, hypervigilant, sometimes progressing into short-tempered, paranoid," and can "produce a paranoid psychosis which is indistinguishable from schizophrenia." *Id*. After observing that this testimony "allowed the prosecution to convey to the jury the notion that *any* person guilty of delivery of methamphetamine would be a risky subject for probation," the Court concluded that "evidence of the effect of methamphetamine on the human mind and body was not relevant to the assessment of [the defendant's] punishment and its admission was error." *Id*. at 366.

*Wilkerson v. State* was a prosecution for possession of phenmetrazine in which it was also proved that the defendant possessed hydromorphone. 707 S.W.2d 756, 757 (Tex. App.—Fort Worth 1986), *aff'd*, 736 S.W.2d 656, 665 (Tex. Crim. App. 1987). The defendant complained on appeal that the trial court had erred by admitting evidence regarding the manner in which these drugs are commonly used and their effects on the user, citing this Court's holding in *Measeles*. The Fort Worth court expressed the opinion that this Court had construed article 37.07, section 3 too narrowly, and it "disagree[d] that the testimony [regarding the effect of the drug]

is irrelevant in either a delivery case or in a possession case." *Wilkerson*, 707 S.W.2d at 757-58. In its opinion affirming the Fort Worth court, the court of criminal appeals questioned the holding in *Measeles* but did not overrule it. *Wilkerson*, 736 S.W.2d at 662-63.

Appellant does not cite or discuss *Measeles* or *Wilkerson*, but he does refer us to two more recent opinions holding that trial courts abused their discretion by admitting photographs of fetuses removed from the bodies of deceased murder victims during autopsy because the photographs were more prejudicial than probative. *See Erazo*, 144 S.W.3d at 496; *Reese v. State*, 33 S.W.3d 238, 243 (Tex. Crim. App. 2000). Appellant also cites *Cantu v. State*, in which the court of criminal appeals held that "victim impact" evidence with respect to a victim not named in the indictment was irrelevant and should not have been admitted. 939 S.W.2d 627, 637 (Tex. Crim. App. 1997). *Reese* and *Cantu* are legally distinguishable because they were prosecutions for capital murder and therefore did not arise under article 37.07, section 3. We also believe that photographs of fetuses removed from the bodies of murder victims are, by their very nature, more inflammatory and prejudicial than the photographs at issue in this cause.

Because there was no motion for new trial, we do not know why appellant's trial counsel did not make the objections appellant now claims she should have made to the admission of Taylor's testimony and the accompanying photographs. It is possible that she believed that the evidence was "relevant to sentence" and hence admissible pursuant to article 37.07, section 3. In light of the broad discretion afforded trial courts to admit evidence at the punishment stage of non-capital trials, and given the scarce and conflicting authority construing the exercise of this discretion in cases such as this, we cannot say that this is a belief that no reasonably effective attorney could

13

have entertained. We also note that on cross-examination, counsel adduced from Taylor the fact that the photographs at issue came "from a police agency in California, I believe it is, if I'm not correct." Perhaps counsel believed that a more effective way to confront the questionable punishment stage evidence was to allow the jurors to see for themselves that it had little or no connection to appellant.

*Amount of Methamphetamine*

During her final argument at the punishment stage, defense counsel sought to persuade the jurors that appellant did not possess a large amount of drugs by recalling some of Taylor's testimony: "The amount of drugs that we're talking about are very small. Detective Taylor testified that he's done busts with 200 pounds of marihuana and 8 ounces or 20 grams of methamphetamine.[2] We're talking about a very small amount of drugs here." Appellant complains that counsel miscalculated the conversion from ounces to grams; that 8 ounces actually equal over 200 grams. This error, argues appellant, made the approximately 10 grams of methamphetamine he was convicted for possessing appear to equal one-half the largest amount Taylor had ever encountered, rather than one-twentieth.

We do not know if counsel miscalculated or misspoke. We believe that this error, either alone or in the context of counsel's overall performance, does not manifest a lack of effectiveness.

It is all too easy, examining trial counsel's assistance after the fact, to conclude that a particular act or omission of counsel was unreasonable, or that a particular trial strategy should not

---

[2] Taylor testified that the largest amounts of drugs he had ever seized were "possibly 200 pounds to 230 pounds [of marihuana]; methamphetamine, 8 ounces."

14

have been pursued. Keeping in mind the deference that is owed trial counsel and in the absence of any evidence of counsel's reasons for conducting the defense as she did, we conclude that appellant has not demonstrated by a preponderance of the evidence that his counsel at trial rendered ineffective assistance. Point of error one is overruled.

## PHOTOGRAPHS

In his remaining point of error, appellant contends that the photographs introduced as state's exhibits 43, 44, and 45 were "not relevant to any aspect of [his] punishment" because "they are not of [him], anyone even remotely associated with [him] or any of his activities, or even of people the State was capable of identifying." Appellant further argues that the State failed to properly authenticate the photographs because Taylor did not have personal knowledge of their accuracy. *See* Tex. R. Evid. 901(b)(1).

The State did not attempt to convey the impression that the photographs at issue were of persons known by or connected to appellant. Instead, as previously discussed, the photographs were introduced to illustrate Taylor's testimony regarding the physical effects of long-term methamphetamine use and were relevant for that limited purpose. Taylor's testimony that the photographs fairly and accurately depicted the things shown was sufficient to establish that the photographs accurately reflected the effects of prolonged methamphetamine use as described by Taylor. Point of error two is overruled.

The judgments of conviction are affirmed.

_____

Jan P. Patterson, Justice

Before Justices Patterson, Puryear and Henson

Affirmed

Filed:   October 3, 2008

Do Not Publish

16