# NO. 12-08-00450-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *SAM KILGORE,*<br>*APPELLANT* | § | *APPEAL FROM THE THIRD* |
| *V.* | § | *JUDICIAL DISTRICT COURT OF* |
| *THE STATE OF TEXAS,*<br>*APPELLEE* | § | *ANDERSON COUNTY, TEXAS* |

### *MEMORANDUM OPINION*

Sam Kilgore appeals from his conviction for capital murder. In one issue, Appellant argues that the trial court abused its discretion when it admitted photographs used to support the testimony of the State's expert witness. We affirm.

## BACKGROUND

Jerry Sinclair was found dead in his cell at the Michael Unit of the Texas Department of Criminal Justice. Appellant, Sinclair's cell mate, told TDCJ's lead investigator, Johnny Thomas, that Sinclair had hanged himself. The prison document pronouncing Sinclair dead stated that he had attempted to commit suicide on a number of occasions. However, following his investigation, Thomas concluded that Appellant had killed Sinclair by strangling him, and Appellant was indicted for capital murder.[1]

At Appellant's trial, the State introduced, without objection, four photographs that Thomas had taken of Sinclair's body during his investigation. However, when Thomas began to testify regarding the cause of Sinclair's death, Appellant objected on the ground that Thomas was a lay

---

[1] The offense was capital murder because, as alleged in the indictment, Appellant was incarcerated for committing an unrelated murder when he killed Sinclair. *See* TEX. PENAL CODE ANN. § 19.03(a)(6)(A) (Vernon Supp. 2008).

witness who was not qualified to testify on causation issues before the jury. The trial court sustained Appellant's objection.

Later in the trial, Steven Pustilnik, M.D., the Chief Medical Examiner for Galveston County and an assistant professor of pathology for the University of Texas Medical Branch at Galveston, testified about the conclusions he drew from the autopsy performed on Sinclair.[2] To assist the jury in its understanding of Dr. Pustilnik's testimony concerning the cause of Sinclair's death, the State introduced ten autopsy photographs. Dr. Pustilnik's testimony about the cause of death addressed the singular issue in the trial, specifically, whether Sinclair had hanged himself or had been strangled to death. Dr. Pustilnik concluded that Sinclair had been strangled to death.

Appellant objected to the photographs arguing that they were unfairly prejudicial because they were cumulative of the photographs already introduced and because the photographs themselves were gruesome. The trial judge conducted a balancing test on the record and then stated that although "any picture of a victim is going to be gruesome, . . . I think these pictures are important to show the circumstances of that death." The trial judge overruled Appellant's objections but allowed a running objection to the photographs.

The jury found Appellant guilty of capital murder. The trial court then sentenced him to life imprisonment. This appeal followed.

## ADMISSION OF AUTOPSY PHOTOGRAPHS

Appellant contends that the trial court abused its discretion in admitting the autopsy photographs because four other photographs of the deceased were already in evidence, the additional photographs were cumulative, and their probative value was outweighed by the danger of unfair prejudice.

### Preservation of Complaint

Generally, the admissibility of a photograph is within the sound discretion of the trial court. *Gallo v. State*, 239 S.W.3d 757, 762 (Tex. Crim. App. 2007). When the trial court hears objections to evidence outside the presence of the jury and rules that such evidence be admitted, the objections

---

[2] Dr. Yvonne Milewski, then the Deputy Chief Medical Examiner for Galveston County, conducted the autopsy. She was unable to testify because she had moved to Suffolk County, New York prior to Appellant's trial. Dr. Pustilnik testified based on the autopsy report prepared by Dr. Milewski.

2

shall be deemed to apply when the evidence is admitted before the jury, without the necessity of repeating the objections. *See* TEX. R. EVID. 103(a)(1); ***Martinez v. State***, 98 S.W.3d 189, 193 (Tex. Crim. App. 2003).

In the instant case, Appellant objected to the autopsy photographs outside the presence of the jury and prior to their introduction. The trial court overruled Appellant's objections and granted him a running objection to the admission of each of the photographs for the remainder of the trial. The State contends that Appellant did not preserve this issue for appellate review because his complaint on appeal does not match the objections raised at trial. *See* TEX. R. APP. P. 33.1(A). We disagree.

In the hearing outside the presence of the jury, Appellant objected to the ten photographs being offered on the basis that they were unfairly prejudicial and that they were needlessly cumulative. Appellant did not specifically invoke Texas Rule of Evidence 403, but it is clear from the context that such an objection was being raised. As required by Rule 403, the trial court weighed the probative value of the evidence against the danger of unfair prejudice before reaching its decision. Accordingly, Appellant has preserved this issue, and we will address it on the merits.

**Standard of Review**

We review the trial court's ruling on the admissibility of photographs under an abuse of discretion standard and will not reverse the trial court's ruling unless it falls outside the zone of reasonable disagreement. *See* ***Resendiz v. State***, 112 S.W.3d 541, 544 (Tex. Crim. App. 2003). Relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay or needless presentation of cumulative evidence. TEX. R. EVID. 403. Rule 403 favors the admission of relevant evidence and carries a presumption that relevant evidence will be more probative than prejudicial. *See* ***Hayes v. State***, 85 S.W.3d 809, 815 (Tex. Crim. App. 2002). When engaging in a Rule 403 balancing test, the trial court must evaluate the probative value of the evidence against the risk that the evidence will have an undue tendency to influence the fact finder on an improper basis, such as an emotional one. *See* ***Long v. State***, 823 S.W.2d 259, 272 (Tex. Crim. App. 1991).

We must use the following factors when making a Rule 403 analysis as to the admissibility of photographs: 1) the probative value of the evidence, 2) the potential to impress the jury in some irrational yet indelible way, 3) the time needed to develop the evidence, and 4) the proponent's need

for the evidence. *See Erazo v. State*, 144 S.W.3d 487, 489 (Tex. Crim. App. 2004). Other factors to be considered include the number of photographs, their size, whether they are in color or are black and white, whether they are gruesome, whether any bodies depicted are clothed or naked, and whether any bodies depicted have been altered by autopsy. *Id.* Visual evidence accompanying oral testimony is not cumulative or of insignificant probative value. *See Chamberlain v. State*, 998 S.W.2d 230, 237 (Tex. Crim. App. 1999) ("Visual evidence accompanying testimony is most persuasive and often gives the fact finder a point of comparison against which to test the credibility of a witness and the validity of his conclusions."). Specifically, autopsy photographs are generally admissible if the medical examiner's verbal testimony as to matters depicted in the photographs is also admissible. *See Newbury v. State*, 135 S.W.3d 22, 43 n.3 (Tex. Crim. App. 2004) (citing *Ramirez v. State*, 815 S.W.2d 636, 647 (Tex. Crim. App. 1991)).

## Rule 403 Analysis

We now apply the pertinent factors to the case before us.

### *Probative Value*

Dr. Pustilnik used the photographs at issue to explain his theory of how Sinclair died. Specifically, Dr. Pustilnik explained that ligature marks from a self hanging occur above the Adam's apple on the neck, while strangulation inflicted by another individual leaves marks low on the neck, under the Adam's apple. He also explained that there are telltale signs of a hemorrhaging of blood in an individual's body when that person has been strangled, that those signs are distinctive, and that they differ from what is observed when a person has hung himself. He also explained that there were marks to Sinclair's body that indicated he was being assaulted by another around the same time he was being strangled, something he would not expect to find if the decedent had hanged himself.

Dr. Pustilnik was able to substantiate his conclusions using the ten autopsy photographs, which were exhibits 29 through 38. Exhibit 29 showed bruises on the victim's hand that had been sustained at or near the time of his death. Dr. Pustilnik explained that these injuries were a defensive guarding reaction against another individual by the victim.

Exhibit 30 showed scratches on the victim's chest, which would have been inflicted by

4

another individual. Exhibit 31 showed two types of ligature marks[3] on the victim's neck. Both types of ligatures, one wide and one narrow, were below the victim's Adam's apple. Exhibit 32 showed that there were at least two separate strangulation events causing the death of the victim, with the marks being below his Adam's apple.

Exhibit 33 was a view of the front and sides of the neck showing the ligature marks were low, below the Adam's apple, and were not angling up as they would have been if the victim had hanged himself. Exhibit 34 showed multiple petechia, little red spots, on the lower part of the victim's face and neck, which indicated that he had been strangled more than once. These would not have occurred on his face had he hanged himself because, as Dr. Pustilnik explained to the jury, these petechia showed that the blood came back into the victim's head at least once while he was being strangled and before he succumbed. Exhibit 35 showed evidence of another individual applying force to the victim's neck.

Exhibit 36 showed the confluent hemorrhaging on the face and the eye, which came from multiple strangulation events. Dr. Pustilnik explained that there are not multiple red spots of hemorrhaging on an individual's face and eyes when he has hanged himself. Instead, he explained that this occurs when someone is struggling for breath while being strangled, or when one effort to strangle a person is unsuccessful and another effort is made. Exhibit 37 showed a bruise on the back of the victim's head, which Dr. Pustilnik concluded had been caused by another individual. Finally, Exhibit 38 was a photograph of the inside of the victim's skull showing the hemorrhaging that had occurred from the blow inflicted to the back of his head.

With the use of these photographs, Dr. Pustilnik was able to explain to the jury the injuries that had been inflicted on the victim and how he died. Dr. Pustilnik's oral testimony was certainly admissible—Appellant did not object to any of Dr. Pustilnik's oral testimony—and therefore the autopsy photographs he used to assist the jury in understanding his medical testimony were of significant probative value. *See **Chamberlain**, 998 S.W.2d at 237. This factor weighs in favor of admissibility of the autopsy photographs.

*Potential to Impress Jury in Irrational and Indelible Way*

---

[3] Ligature marks found around the victim's neck were made by, according the State's theory, two shoestrings that were tied together as one and a ripped bed sheet.

5

Autopsy photographs have the potential to make an impression on any observer because they show an examination of a person's body.  On the other hand, autopsy photographs can be especially helpful to explain a medical examiner's testimony describing the victim's various wounds or a cause of death.  *See Escamilla v. State*, 143 S.W.3d 814, 825 (Tex. Crim. App. 2004).  In this case, there were valid reasons for each of the photographs to be admitted, and none were offered simply to appeal to the jury's emotion to render an irrational verdict.  *See Erazo*, 144 S.W.3d at 494–95 (error to admit photograph that was not related to a disputed fact of consequence).

As Appellant points out, several of the photographs are disturbing.  One showed Sinclair's eyelid being held back to illustrate the damage to the blood vessels in his eye.  Another showed how a blunt force blow to the back of his head was so powerful that it left a mark on the inside of his skull.  These photographs were necessary to show the injuries to the victim and were necessary to show how it was that he was killed.  They are more clinical than macabre, but it is possible that, for some jurors, these photographs had an emotional impact.  *See id.* at 495.

Images of a body that has been manipulated during the process of an autopsy can be disturbing.  However, as the court of criminal appeals has stated recently, the risk of unfair prejudice is lower when the manipulation of the body is done by the medical examiner.  *See Gallo*, 239 S.W.3d at 763.  The photographs were in color, and several depicted the victim without clothing.

The two specific photographs that show manipulation of the body have some potential to impress the jury in an irrational and indelible way.  The other eight photographs are less troubling.  Under the circumstances, the photographs were no more gruesome than can be expected in a case where the issue in contention is whether the victim hanged himself or was strangled.  On balance, this factor does not weigh strongly either for or against the admissibility of the photographs.

### *Time Needed to Develop Evidence*

The bench conference outside the presence of the jury and Dr. Pustilnik's entire testimony, both on direct and cross examinations, lasted from 9:14 to 10:25 on one morning of a four day trial.  This factor weighs in favor of admissibility of the autopsy photographs.

### *Proponent's Need for Evidence*

Appellant's defensive theory at trial was that Sinclair had killed himself by hanging.  There

was evidence that Sinclair had made a number of attempts to commit suicide, and the jury heard that Appellant had told Thomas that Sinclair had committed suicide. Furthermore, Appellant had successfully prevented Thomas from testifying as to the cause of Sinclair's death. The State was thus in need of presenting evidence to the jury establishing beyond a reasonable doubt that Sinclair had been murdered, rather than committing suicide. In fact, this was the sole contested issue. Dr. Pustilnik's testimony, aided by the ten autopsy photographs, was crucial to establishing that Sinclair had been strangled, and the photographs were directly addressed to that specific issue. These photographs were not merely cumulative. This is because Dr. Pustilnik based his conclusions on the photographs, and the photographs that accompanied his testimony were better illustrations of the marks on the victim's neck than were the previously admitted photographs. Therefore, this factor weighs in favor of admission of the ten autopsy photographs.

### *Conclusion*

We hold that the trial court did not abuse its discretion in admitting the ten autopsy photographs. While the photographs depicted a man who was dead, and showed specific injuries he had sustained, some in detail, the trial court properly balanced the risk of unfair prejudice against the probative value of the evidence. The photographs were highly probative of the kind of injuries Appellant sustained, and that probative value was not outweighed by the danger of unfair prejudice. *See* ***Gallo***, 239 S.W.3d at 763. We overrule Appellant's sole issue.

## DISPOSITION

We ***affirm*** the judgment of the trial court.

                                                         **JAMES T. WORTHEN**
                                                              Chief Justice

Opinion delivered August 28, 2009.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*

(DO NOT PUBLISH)

7