Court of Appeals
Fourth Court of Appeals District of Texas
San Antonio




## OPINION

No. 04-10-00277-CR

Charles **REESE**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 437th Judicial District Court, Bexar County, Texas
Trial Court No. 2009-CR-5816
Honorable Lori I. Valenzuela, Judge Presiding

Opinion by:    Sandee Bryan Marion, Justice

Sitting:        Sandee Bryan Marion, Justice
                  Rebecca Simmons, Justice
                  Marialyn Barnard, Justice

Delivered and Filed:  March 16, 2011

AFFIRMED

Appellant, Charles Reese, was indicted for the murder of his wife, Shanika Sanford. The indictment was enhanced with a prior conviction for felon in possession of a firearm. A jury found appellant guilty and assessed punishment at life in prison and a $5000 fine. We affirm.

### FACTUAL BACKGROUND

On the evening of March 9, 2009, appellant's cousin, Richard Chew, a friend of Chew's, appellant, and appellant's wife, Shanika Sanford, all spent the night at Chew's apartment. The

next morning, Chew left to take his friend home, leaving appellant and Sanford behind in his apartment. Chew said appellant and Sanford got along the previous evening, but when he returned to his apartment on March 10th, appellant and Sanford were calling each other names. The name-calling escalated to a physical confrontation. Chew witnessed appellant and Sanford "wrestling and grabbing, [and] bouncing off walls" and hitting each other. He also saw appellant kick Sanford. When asked about Sanford's demeanor during the fight, Chew said she was crying and she "was just like, you know, I'm going to get you locked up." Chew said appellant's reaction was "I aint't going to jail over you."

The trio then walked outside to take Sanford to her home. Chew got into the driver's seat of his truck, appellant got into the front passenger seat, but Sanford began to walk away from the truck. Chew testified appellant said, "Shit, I'm fixing to do her . . . I'm about to kill her," then he pulled out a gun, exited the truck, and walked toward Sanford. Chew described Sanford's reaction to seeing appellant with the gun as "She backed up, . . . [and] she raised her hands." Chew testified that Sanford said "stop" and "I'm going to send you to jail." Chew testified appellant shot Sanford, Sanford fell to the ground, and appellant continued to shoot at her.

## PHOTOGRAPHS OF THE VICTIM AFTER THE SHOOTING

On appeal, appellant asserts the trial court erred by admitting into evidence several photographs of Sanford at the scene of the murder.

We review a trial court's ruling on the admissibility of a photograph for an abuse of discretion. *Gallo v. State*, 239 S.W.3d 757, 762 (Tex. Crim. App. 2007). "A visual image of the injuries [a defendant] inflicted on the victim is evidence that is relevant to the jury's determination." *Id*. However, relevant evidence must be excluded when its probative value "is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading

the jury, or by considerations of undue delay, or needless presentation of cumulative evidence." TEX. R. EVID. 403. Rule 403 favors the admission of relevant evidence and carries a presumption that relevant evidence will be more probative than prejudicial. *Gallo*, 239 S.W.3d at 762. The following, non-exclusive factors should be considered when making a Rule 403 analysis: "(1) the probative value of the evidence; (2) the potential to impress the jury in some irrational, yet indelible, way; (3) the time needed to develop the evidence; [and] (4) the proponent's need for the evidence." *Erazo v. State*, 144 S.W.3d 487, 489 (Tex. Crim. App. 2004).

When determining whether to admit or exclude photographic evidence of a victim's injuries, a court may also consider: (1) the number of photographs; (2) their size; (3) whether they are black and white or color; (4) their gruesomeness; (5) whether any bodies depicted are clothed or naked; and (6) whether any bodies depicted have been altered by autopsy. *Erazo*, 144 S.W.3d at 489. Visual evidence accompanying oral testimony is not cumulative or of insignificant probative value. *See Chamberlain*, 998 S.W.2d at 237 ("Visual evidence accompanying testimony is most persuasive and often gives the fact finder a point of comparison against which to test the credibility of a witness and the validity of his conclusions."); *Williams v. State*, 937 S.W.2d 479, 487 (Tex. Crim. App. 1996) (photographs of a murder victim may be admissible to show the manner and means of death, even if they merely corroborate other kinds of evidence). Also, that a relevant picture is gruesome does not alone require its exclusion from evidence. *See Sonnier v. State*, 913 S.W.2d 511, 519 (Tex. Crim. App. 1995) (en banc). After independently evaluating all of these factors, we will reverse a trial court's admission of photographic evidence only when the probative value of the evidence is small and its

inflammatory potential is great.  *Ramirez v. State*, 815 S.W.2d 636, 647 (Tex. Crim. App. 1991) (en banc).

Appellant objected to five of the photographs showing Sanford's lifeless body at the crime scene, which were Exhibits 17–21.  Only two of the photographs might be considered close-ups.  None are autopsy photos.  Each photograph shows Sanford's body from a different angle, illustrating the manner and direction from which she was shot.  Exhibit 17 is taken from an angle slightly above and to the left of Sanford's body.  Exhibit 18 shows an entry or exit wound on the right side of her face.  Exhibit 19 shows a bullet wound to her left cheek.  Exhibit 20 is a photograph of Sanford positioned on her left side, illustrating bullet wounds to her right shoulder and back.  Exhibit 21 shows bullet wounds to Sanford's neck and back.  These photographs corroborate the testimony of both the responding officer and the pathologist as to the location and manner of the crime.  After reviewing the photographs, we conclude the photographs are not so gruesome that they would "impress the jury in some irrational, yet indelible, way."  *See Erazo*, 144 S.W.3d at 489.

As to the victim's state of dress in the photographs, because Sanford was wearing a short dress at the time of her murder, her underwear is partially visible in one of the photographs.  Appellant argues that because the photograph "draws attention to [Sanford's] skimpy clothing, . . . [it] suggests that the victim suffered sexual assault as well."  We disagree.  The photograph in Exhibit 17 is taken from an angle above and to the side of Sanford's body and does not emphasize or enhance the view of her underwear, which is only barely visible in the wide-angle shot.  The photograph itself does not indicate Sanford was sexually assaulted, nor did the State present any evidence at trial suggesting a sexual assault took place.  Thus, we conclude the photographs were not unduly inflammatory in their depiction of the victim's state of dress.

We cannot say the probative value of the objected-to photographs was substantially outweighed by the danger of unfair prejudice or that they misled the jury. Therefore, the trial court did not abuse its discretion by admitting the photographs into evidence.

## SUDDEN PASSION INSTRUCTION

Appellant asserts the trial court erred by denying his request for a sudden passion charge during the punishment phase of trial. During the punishment phase, a defendant may attempt to mitigate his punishment by raising the issue as to whether "he caused the death under the immediate influence of sudden passion arising from an adequate cause." TEX. PENAL CODE ANN. § 19.02(d) (West 2003). Before a defendant is allowed a sudden passion instruction, there must be some evidence "that there was an adequate provocation, that a passion or an emotion such as fear, terror, anger, rage, or resentment existed, that the homicide occurred while the passion still existed and before there was reasonable opportunity for the passion to cool; and that there was a causal connection between the provocation, the passion, and the homicide." *McKinney v. State*, 179 S.W.3d 565, 569 (Tex. Crim. App. 2005); *see also* TEX. PENAL CODE ANN. § 19.02(a)(1), (2) (West 2003). A "sudden passion charge should be given if there is some evidence to support it, even if that evidence is weak, impeached, contradicted, or unbelievable. *Trevino v. State*, 100 S.W.3d 232, 238 (Tex. Crim. App. 2003). But the evidence "cannot be so weak, contested, or incredible that it could not support such a finding by a rational jury." *McKinney*, 179 S.W.3d at 569.

During his videotaped interrogation, appellant said that when they were outside, Sanford refused to get into Chew's truck, saying "I got you now," which appellant believed meant she would turn him into the police. Appellant said he continued to shoot Sanford after she fell to the ground because he did not want her to suffer by living with the fact that the man she loved had

shot her. On appeal, appellant contends this "betray[al of] their marriage" provoked him into shooting her. Appellant argues he was entitled to a sudden passion instruction because he acted immediately upon Sanford's provocation of refusing to get into Chew's truck and threatening him with jail.

We cannot agree with appellant's characterization of Sanford's actions as such a betrayal of their marriage as to cause him to lose control. "Adequate cause" is "cause that would commonly produce a degree of anger, rage, resentment, or terror in a person of ordinary temper, sufficient to render the mind incapable of cool reflection." TEX. PENAL CODE ANN. § 19.02(a)(1) (West 2003). Even if Sanford's actions and words provoked appellant's anger, his reaction of shooting her to death was not triggered by "adequate cause." We believe shooting Sanford after she walked away from the truck and then backed away from appellant with her hands raised when he approached her with the gun is not an objectively common response in an ordinary, reasonable person. Neither is shooting her several more times because appellant did not want Sanford to suffer by living with the fact that the man she loved had shot her. Therefore, the trial court did not err in denying appellant a sudden passion instruction.

## PUNISHMENT PHASE EVIDENCE

At the beginning of the punishment phase of trial, the State failed to read the enhancement allegation regarding a January 2004 conviction contained in the indictment; therefore, appellant did not enter a plea on the allegation. Nevertheless, testimony from Robert Jimenez, who is the Records Identification Supervisor in the Bexar County Sheriff's Office, and the pen packet regarding appellant's January 2004 felon in possession of a firearm conviction were admitted into evidence. In addition to Jimenez's testimony, the jury also heard from two other witnesses: (1) Sanford's grandmother who testified about Sanford's relationship with

appellant, and (2) a San Antonio police officer who testified about a January 2009 domestic violence call during which he interviewed Sanford.

The next day the State realized it had not read the enhancement allegation, and the prosecutor asked the trial court to properly arraign appellant on the January 2004 felon in possession of a firearm enhancement allegation. The trial court did so, but told the State it would need to reoffer its evidence on the enhancement unless appellant stipulated to the evidence. Appellant pled not true to the enhancement allegation and refused to stipulate. The State reoffered to the bench the prior testimony of Sanford's grandmother and the police officer. The State also recalled Jimenez, who testified again before the jury regarding appellant's prior felon in possession of a firearm conviction. Finally, the State reoffered the exhibits relating to the prior conviction.

On appeal, appellant raises several complaints. First, appellant contends the trial court should have instructed the jury to disregard all the testimony and evidence heard prior to the reading of the enhancement allegation. Appellant cites to no authority for this argument and we find no statute or case law requiring such an instruction. Even if such an instruction was appropriate, appellant did not request one of the trial court. Therefore, we conclude the trial court did not err by failing to give such an instruction.

Appellant next asserts that because he refused to stipulate to any testimony or evidence offered prior to the reading of the indictment, the State was required to re-offer all such testimony and evidence. We disagree. The Texas Code of Criminal Procedure requires the prosecuting attorney to read the indictment to the jury. TEX. CODE CRIM. PROC. ANN. art. 36.01(a)(1) (West 2007). "When prior convictions are alleged for purposes of enhancement only and are not jurisdictional, that portion of the indictment or information reciting such convictions

shall not be read until the hearing on punishment is held as provided in Article 37.07." *Id.* Reading the enhancement paragraph at the punishment phase in a bifurcated trial, such as here, is mandatory; however, the failure to do so may be cured. *Turner v. State*, 897 S.W.2d 786, 788 (Tex. Crim. App. 1995) (en banc); *Warren v. State*, 693 S.W.2d 414, 416 (Tex. Crim. App. 1985) (en banc). "The procedure to be followed has been long established: upon learning of the error, the indictment is read to the jury, the accused enters a plea and the State reintroduces the evidence; or the parties may stipulate to the evidence." *Warren*, 693 S.W.2d at 416.

The requirement that enhancement allegations be read to the jury joins the issue on which to enhance punishment. *See Ex parte Sewell*, 742 S.W.2d 393, 395 (Tex. Crim. App. 1987) (en banc) ("Without the reading of that part of the charging instrument that contains the enhancement allegations, and the entering of a plea thereto, no issue is joined upon which to enhance the punishment."). Here, when appellant pled not true to the single enhancement he joined issue with the State as to that allegation. Because appellant refused to stipulate to the evidence, it then became incumbent upon the State to prove what it had alleged. *See id.* at 396. Therefore, we conclude the State was not required to re-offer all evidence heard before the reading of the enhancement allegation; but was, instead, required to re-offer only the evidence relevant to the enhancement, which it did by recalling Jimenez who re-authenticated the exhibits related to appellant's January 2004 conviction.

### CONCLUSION

We overrule appellant's issues on appeal and affirm the trial court's judgment.

Sandee Bryan Marion, Justice

PUBLISH