**AFFIRM; and Opinion Filed January 28, 2014.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-13-00234-CR

**JOHN HENRY WILSON, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the 282nd Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. F-1255608-S**

## MEMORANDUM OPINION

Before Justices O'Neill, Myers, and Brown
Opinion by Justice O'Neill

A jury convicted appellant John Henry Wilson of murder. The trial court sentenced him to forty-five years' imprisonment. In two issues, appellant argues the trial court abused its discretion by sustaining the State's objection to a relevant photograph showing the deceased's gang affiliation, and the evidence is insufficient to support the assessment of $264 in court costs. We affirm the trial court's judgment.

### Background

In March of 2012, Akyra Bosman started dating Randall Ferrell, whom she knew as Ran Ran. According to Bosman, despite still being in a relationship with appellant, she and Ran Ran "had love for each other." Appellant knew about Bosman's relationship with Ran Ran, but allegedly did not have a problem with it.

On May 8, 2012, three days before the murder, appellant and Akyra Bosman ended their five-year relationship but agreed to remain amicable for the sake of their children. On May 11, 2012, appellant and Bosman were staying at Bosman's mother's apartment in the Dixon Circle area of South Dallas. Early that morning, appellant left the apartment to run a few quick errands and told Bosman he would return shortly to take their son to the barber shop.

After appellant left the apartment, Bosman called Ran Ran. When appellant returned to the apartment, approximately fifteen minutes later, he saw Ran Ran sitting in a car outside the apartment complex. Appellant recognized Ran Ran as the man who, back in March, followed appellant in his car and fired gunshots at him on the highway. Appellant claimed he had not seen Ran Ran between March and May. He did, however, allege that Ran Ran sent him threatening text messages and made threatening phone calls a few days before the murder.[1] Because of the threats, appellant feared for his life and purchased a gun off the street.

Appellant testified that as he got closer to the car, Ran Ran reached for a gun. Because he feared Ran Ran would shoot him, appellant pulled his gun and started shooting through the driver's side window. The evidence showed appellant fired at least six shots and possibly as many as nine.

Bosman was coming out of her mother's apartment to meet Ran Ran when she saw appellant shoot him and then run away. By the time police and paramedics arrived, Ran Ran had died.

Detectives investigated the scene but did not find a gun in the car. However, a witness testified he saw two men wearing red, which indicated gang affiliation with the Bloods, quickly search through Ran Ran's car after the shooting. The two men left before officers arrived.

---

[1] Cell phone records from Ran Ran's phone, however, do not support appellant's claim regarding the phone calls.

Appellant was arrested several days later for the murder. He claimed he shot Ran Ran in self-defense. Evidence showed appellant received a text message from Ran Ran a few days before the shooting that said, "Say fool u betta step bak fukn wit me ill kum to yo pepl hous n show u how i rokk so befo u strt plyn wit me u need to do sum home wrk playboy." Appellant said according to people at the neighborhood barber shop, Ran Ran was a member of 44 Oakland, a Blood gang in South Dallas.

Despite his self-defense claim, the jury convicted appellant of murder. The trial court sentenced him to forty-five years' imprisonment. This appeal followed.

### Photographic Evidence of Gang Affiliation

In his first issue, appellant argues the trial court abused its discretion by sustaining the State's objection to a relevant photograph showing Ran Ran's gang affiliation. He argues the photograph was probative to establish that Ran Ran was a violent gang member, which supported his self-defense claim. The State responds the photograph (1) lacked probative value, (2) would have left an improper impression on the jury, (3) would have caused unnecessary delay, and (4) was cumulative evidence.

The admissibility of a photograph rests within the trial court's sound discretion based on a determination of whether the exhibit serves a proper purpose in assisting the fact-finder. *Rolle v. State*, 367 S.W.3d 746, 750 (Tex. App.—Houston [14th Dist.] 2012, pet. ref'd); *see also Burden v. State*, 55 S.W.3d 608, 615 (Tex. Crim. App. 2001). An appellate court will not reverse a trial court's ruling unless that ruling falls outside the zone of reasonable disagreement. *Id.*

Only relevant evidence is admissible. Relevant evidence is "evidence having a tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." TEX. R. EVID. 401. Although

relevant, probative evidence may be excluded "if its probative value is outweighed by the danger of unfair prejudice." TEX. R. EVID. 403.

A proper rule 403 analysis includes the following factors (1) the probative value of the evidence; (2) the potential to impress the jury in some irrational, yet indelible, way; (3) the time needed to develop the evidence; and (4) the proponent's need for the evidence. *Erazo v. State*, 144 S.W.3d 487, 489 (Tex. Crim. App. 2004).

Here, during the guilt-innocence phase of trial, appellant offered Defense Exhibit 1, a photograph depicting what appears to be a memorial that had been spray-painted onto the parking space where Ran Ran's car was parked at the time of the shooting. The memorial said, "RIP Ran-Ran Gone But Not 44gotten."

The State objected to the photograph as irrelevant and that admission of the photograph would be more prejudicial than probative. Appellant countered the photograph was relevant because Ran Ran was a gang member and "gang members are violent." "Gang members are dangerous, and he had been threatened by a gang member . . . to do his homework."

The trial court held a hearing outside the presence of the jury. Detective Richard Duggan, the lead detective on the case, was questioned regarding the photograph. He testified he did not know who spray-painted the memorial, and he did not take the picture. Rather, another officer at the scene took the picture. Detective Duggan only saw the photograph in the case file. When asked what, if anything, "44 Gotten" had to do with the case, he said, "I think it's part of a gang for 44 something, Oakland 44, Oakland, yeah."

After voir dire and arguments from counsel, the trial court determined the photograph was inadmissible because "all the evidence, every single about of testimony is not indicating any gang involvement. Instead, this is a domestic dispute." The court further stated, "This is not a gang hit. . . . This is a domestic dispute between two guys [who] love the same woman . . . the

–4–

gang evidence, at this point, is immaterial and more prejudicial than probative." The court also noted the evidence was cumulative because defense counsel had previously elicited testimony regarding Ran Ran's gang membership.

Appellant's defensive theory was that he acted in self-defense. Generally, a defendant in a homicide prosecution who raises self-defense may introduce evidence of the victim's violent character. TEX. R. EVID. 404(a)(2); *London v. State*, 325 S.W.3d 197, 205 (Tex. App.—Dallas 2008, pet. ref'd). Evidence of the deceased's violent character may be admissible to show that the deceased was the first aggressor and/or that the defendant's apprehension of danger was reasonable. *See Fry v. State*, 915 S.W.2d 554, 560 (Tex. App.—Houston [14th Dist.] 1995, no pet.).

On appeal, appellant argues because detectives did not recover a gun from Ran Ran's car, his self-defense claim rested upon his perception that his life was in danger that morning. Moreover, appellant asserts he personally knew Ran Ran was capable of violence because of the shooting incident in March and what he perceived as a threatening text message. He claims, "The jury should have had the benefit of seeing the photograph that substantiated Appellant's claim that Ran Ran was a dangerous person." After considering the *Erazo* factors, we cannot agree. *See Erazo*, 144 S.W.3d at 489.

The first prong of rule 403 weighs in favor of exclusion because the photograph had little probative value in relation to the charged offense. Appellant was charged with murder. Despite appellant's self-defense claim, the picture depicting a memorial to the victim did not indicate Ran Ran was violent or that he attempted to harm appellant on the day in question. Thus, the photograph would not "substantiate Appellant's claim that Ran Ran was a dangerous person."

The second factor–the ability of the photograph to impress the jury in some irrational or indelible way–also weighs in favor of exclusion. The evidence indicated the shooting was the

result of a domestic dispute because of both men's involvement with Bosman. Admission of the photograph could have left the impression with the jury that the shooting was gang-related. However, as the trial court discussed during the hearing, there was no evidence this was a "gang hit." Moreover, we agree with the State that the testimony regarding two men wearing red and searching Ran Ran's car after the shooting is not evidence that the two men were members of the 44 Oakland Bloods. Further, despite appellant's assertion that the two men were Ran Ran's "back up," there is no evidence the two men tried to harm appellant after the shooting or intervene in anyway. Thus, these arguments are unsubstantiated speculation and do not support appellant's argument that Ran Ran was a dangerous gang member.

While the State argues the time needed to develop the evidence would have resulted in unnecessary delay, we conclude this factor weighs neither in favor, nor against, admission of the photograph. Detective Duggan testified he was not the officer who took the picture, and he was not the officer who identified Ran Ran through the gang database. Thus, the record is clear Detective Duggan was not the proper witness to testify regarding the photograph; therefore, appellant would need time to call the correct officer. Appellant would also need to call a witness to explain to the jury the history and type of conduct the 44 Oakland Bloods engaged in. Again, Detective Duggan did not have this knowledge. Although the trial court noted laying the appropriate foundation was "not going to be quick," the court did not express it would cause unreasonable delay, and this does not appear to be the main reason for the court's exclusion of the photograph. While the record does not indicate appellant had a knowledgeable witness ready to testify about the gang, we will not hold this absence against appellant. Our conclusion is further supported by the trial court's willingness to revisit its ruling at a later time "because it may become admissible later depending on what happens." Thus, the trial court did not appear overly concerned with the time to develop such evidence, if circumstances changed.

Lastly, we determine appellant's need for the evidence. In addressing this factor, we consider three questions: (1) Does the proponent have other available evidence to establish the fact of consequence that the photograph is relevant to show? (2) If so, how strong is that other evidence? (3) Is the fact of consequence related to an issue that is in dispute? *Erazo*, 144 S.W.3d at 495–96; *Rolle*, 367 S.W.3d at 752. Regarding these three questions, testimony during trial established that Ran Ran was a gang member. Appellant testified he found out Ran Ran was a gang member after doing his "homework" and talking with people at the local barbershop. In fact, the State did not dispute Ran Ran's gang membership. Thus, the jury had already been presented with evidence of Ran Ran's gang affiliation; therefore, the picture would not have added anything to his self-defense argument. And, as noted by the trial court, the photograph would have been cumulative evidence. *See* TEX. R. EVID. 403 (needless presentation of cumulative evidence may be inadmissible).

Given that three of the four factors weigh in favor of excluding Defense Exhibit 1, the trial court did not abuse its discretion by ruling any probative value of the photograph was outweighed by the danger of unfair prejudice. Thus, appellant's first issue is overruled.

## Assessment of Court Costs

In his second issue, appellant argues the evidence is insufficient to support the assessment of $264 in court costs because the clerk's record does not contain a proper bill of costs. After appellant filed his brief, this Court sua sponte issued an order directing the Dallas County District Clerk's Office to file a supplemental record containing an itemized bill of costs. *See* TEX. R. APP. P. 34.5(c)(1) (stating rules of appellate procedure allow supplementation of the clerk's record if relevant item has been omitted). On December 10, 2013, the Dallas County District Clerk's Office complied with our order and filed an itemized bill of costs. Accordingly, with the supplemental clerk's record now before us, appellant's complaint that the evidence is

insufficient to support imposition of costs is moot. *Franklin v. State*, 402 S.W.3d 894, 894 (Tex. App.—Dallas 2013, no pet.).

## Conclusion

Having overruled appellant's two issues, we affirm the trial court's judgment.

/Michael J. O'Neill/
MICHAEL J. O'NEILL
JUSTICE

Do Not Publish
TEX. R. APP. P. 47

130234F.U05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

JOHN HENRY WILSON, Appellant

No. 05-13-00234-CR        V.

THE STATE OF TEXAS, Appellee

On Appeal from the 282nd Judicial District Court, Dallas County, Texas

Trial Court Cause No. F-1255608-S.

Opinion delivered by Justice O'Neill.

Justices Myers and Brown participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 28th day of January, 2014.

/Michael J. O'Neill/

MICHAEL J. O'NEILL
JUSTICE